## THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TENNESSEE
## AT KNOXVILLE

| | | |
|---|---|---|
| ROBERT T. STOOKSBURY, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | : No._____ | |
| | ) | |
| MICHAEL L ROSS; LTR PROPERTIES, INC.; | ) | |
| VPI COMPANY, LLC; | ) | **JURY DEMAND** |
| RARITY BAY REALTY, INC., EVELYN W. ROSS, | ) | |
| TED DOUKAS; ATHENA OF SC, LLC; | ) | |
| AMERICAN HARPER CORPORORATION; | ) | |
| AMERICAN HARPER CORPORATION, d/b/a | ) | |
| RP CC MANAGEMENT COMPANY, and d/b/a | ) | |
| RB CC MANAGEMENT COMPANY; | ) | |
| LIKOS OF TENNESSEE, INC.; RAPOSO REALTY, LLC; | ) | |
| BRETON EQUITY COMPANY CORP.; EFASTOS CORP.; | ) | |
| GISELLE TEIXEIRA, a/k/a GISELLE DOUKAS; | ) | |
| REBECCA ROSE ROSS JORDAN; | ) | |
| RARITY MANAGEMENT COMPANY, LLC; | ) | |
| PATRICIA ROSS, individually and as | ) | |
| personal rep. of the Estate of Dale Ross; | ) | |
| JAMES F. MACRI; TENNESSEE LAND AND LAKES, LLC; | ) | |
| NJS DEVELOPMENT COMPANY, LLC; | ) | |
| WH McCOLLUM & CO., LLC; | ) | |
| RM COMPANY, LLC; PINE MOUNTAIN PARTNERSHIP; | ) | |
| PINE MOUNTAIN PROPERTIES, G.P., | ) | |
| RMT COTTAGES, LLC, RMT PROPERTIES, LLC, | ) | |
| RMT PROPERTIES, LP, RMT VILLAGE SHOPS, LLC, | ) | |
| PM PROPERTIES OF TENNESSEE, LP, | ) | |
| PM PROPERTIES OF TENNESSEE, LLC, | ) | |
| PM PROPERTIES #2 OF TENNESSEE, LP, | ) | |
| PM PROPERTIES #2 OF TENNESSEE, LLC, | ) | |
| PM PROPERTIES #3 OF TENNESSEE, LP, | ) | |
| PM PROPERTIES #3 OF TENNESSEE, LLC, | ) | |
| M&D ROSS RENTALS; OR PROPERTIES, LLC; | ) | |
| CC PROPERTIES, LLC; | ) | |
| CONSUMER RESEARCH COMPANY; | ) | |
| RFD, LLC; HDP PROPERTIES, LLC; | ) | |
| RRT PROPERTIES, LLC; VONORE PROPERTIES, LLC; | ) | |
| WFD COMPANY, INC.; R.P.M. RECOVERIES, INC.; | ) | |

TELLICO COMMUNITIES, LLC; RCCA COMPANY, INC; )
RMT CH PROPERTIES, LLC; and LTR MARINA, LLC,  )
                                               )
                    **Defendants.**            )

## COMPLAINT

Plaintiff Robert T. Stooksbury, Jr., by and through counsel, brings this action against these Defendants based upon the following grounds for relief.

## JURISDICTION AND VENUE

1.     This Honorable Court has subject matter jurisdiction in this case pursuant to the provisions of 28 U.S.C. §1331 (federal question) because Defendants' conduct that is the subject of this case arises out of an illegal real estate conveyance enterprise and conspiracy in which Defendants were actively involved in violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§1961, *et seq*. (RICO).    The referenced illegal real estate conveyance enterprise and conspiracy is described more fully below.

2.     Additionally, this Court has subject matter jurisdiction because this is an ancillary enforcement proceeding which specifically relates to conduct committed in derogation of the enforcement of a Judgment entered in the case of <u>Stooksbury v. Ross, et al.</u>, in the United States District Court for the Eastern District of Tennessee, docket number 3:09-cv-00498 (the "2009 Federal RICO case").

3.     As the record reflects in the 2009 Federal RICO case:   Judgment was entered on March 6, 2012, in accordance with the jury's verdict as to the amount of compensatory and punitive damages [Doc. 390] (a true copy of which is hereto attached as **Exhibit 1**); an Order was subsequently entered on May 30, 2012, awarding Plaintiff treble damages pursuant to 18

2

U.S.C. § 1964(c) [Doc. 393]; and an Order was entered on August 23, 2012, awarding Plaintiff's attorneys' fees and costs pursuant to 18 U.S.C. § 1964(c) [Doc. 708]. Those Defendants against whom the referenced Judgment was entered shall be collectively referenced herein as the "Judgment Debtors."

4. As part of post-judgment proceedings in the 2009 Federal RICO case, the Court entered an Order on May 23, 2012, appointing a Receiver and precluding the Judgment Debtors from engaging in certain conduct, including transferring, conveying and encumbering assets [Doc. 548] (a true copy of which is hereto attached as **Exhibit 2**).

5. Because this Court has the inherent authority to enforce its judgments and because this case in significant part seeks relief pertaining to the Receivership and the post-judgment investigation of the Receiver on account of fraudulent conveyances made at relevant times by the Judgment Debtors and/or their agents in conjunction with the insiders and/or related entities who are also Defendants herein, this Court is vested with ancillary, supplemental and/or enforcement jurisdiction in this case pursuant to 28 U.S.C. §§ 754 and 1692.

6. Plaintiff specifically contends that the property and assets that are the subject of the fraudulent conveyances described herein should be part of the Receivership previously established by the Court in the 2009 Federal RICO case and/or a Receivership established in this case.

7. Additionally, this Court has subject matter jurisdiction in this case because Defendants' actions and omissions, described more fully below, violate federal common law.

3

8.     Pursuant to 28 U.S.C. § 1367, this Court has ancillary jurisdiction of Plaintiff's state law claims set forth herein, because such claims are so related to the claims in this action within the Court's original jurisdiction that they form part of the same case or controversy.

9.     The Court has *in personam* jurisdiction over the Defendants herein because each of the Defendants was regularly doing business within this judicial district at relevant times, personally and/or through agents and/or one or more business entities.

10.     Venue is proper in this judicial district pursuant to the provisions of 28 U.S.C. § 1391 and 18 U.S.C. § 1965(a), in that all or a substantial part of the events giving rise to Plaintiff's claims occurred in this judicial district.

## THE NATURE OF THE CASE

11.     This is an action for damages to Plaintiff and for injunctive relief on account of for Defendants': (a) violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§1961, *et seq.*, (RICO); (b) wrongful conduct which constitutes actual and constructive fraud, a fraud on this Honorable Court, and/or a fraud on the United States Bankruptcy Court for the Eastern District of Tennessee; and (c) for the commission and facilitation of fraudulent conveyances.

12.     Plaintiff's damages were proximately, directly and legally caused by Defendants' wrongful conduct and the injunctive relief requested by Plaintiff in this action is well supported, appropriate pursuant to the Federal Rules of Civil Procedure and the attendant case law, and necessary to avoid irreparable harm to the Plaintiff, as well as homeowners at the subject real estate developments.

4

13.     At relevant times during the pendency of the 2009 Federal RICO case, which remains in litigation, the Judgment Debtors who are Defendants herein, themselves and through their agents and various business entities controlled by them, entered into agreements and transactions with third parties (who are also Defendants herein) for the purpose of transferring and/or encumbering the Judgment Debtors' property, property rights, and other assets to hinder, delay, and defraud the Plaintiff.    When engaging in these transactions and incurring these obligations, the Judgment Debtors failed to receive a reasonably equivalent value in exchange for the referenced transfers or obligations.  Because of these fraudulent agreements and transactions, which have occurred at various times from the commencement of the 2009 Federal RICO case through the present, said Judgment Debtors were rendered substantially insolvent.

14.     Based on the equitable and inherent powers of the Court, Plaintiff respectfully requests: (a) that the Receiver previously appointed in the 2009 Federal RICO case be appointed as Receiver in this related action during the pendency of this case; (b) that the Receiver have immediate oversight over all assets that are the subject of this action in order to preserve the *status quo*, to preserve the assets, and to prevent further waste of the assets; (c) that Defendants promptly provide the Receiver with an accounting of the assets that are the subject of this action, as well as an accounting of all transfers, expenditures, or encumbrances of their assets during the time period relevant to this action; (d) that the subject agreements and transfers be set aside as a fraud on this Court and/or as fraudulent conveyances; (e) that Defendants be completely divested of any and all interest in the subject assets, that Defendants restore any funds or assets improperly taken or expended, and that Defendants forfeit any funds used or expended to facilitate the fraudulent transfers and conveyances that are the subject of this action; (f) that the

5

assets that are the subject of this action be seized and sold and/or used to the fullest extent necessary to satisfy Plaintiff's judgment in the 2009 Federal RICO case; and (g) that Defendants be enjoined from transferring, wasting, expending, encumbering or making any other dispositions of any entity or asset in their control that relates in any manner to assets formerly owned by the Judgment Debtors pending the resolution of this action and the full satisfaction of Plaintiff's Judgment in the 2009 Federal RICO case, absent Defendants first obtaining permission from the Court.

15.     The individuals primarily involved in the agreements, transfers and conveyances that are the subject of this action are:  Judgment Debtor and Defendant Michael L. Ross (himself and through his authorized agents and attorneys, including but not limited to attorney John Stravato); Judgment Debtor and Defendant Rebecca Rose Ross Jordan (herself, and through her authorized agents, including Michael L. Ross and others); Judgment Debtor and Defendant Patricia Ross (who at times relevant to this action, was acting both in her individual capacity for her personal benefit, as well as on behalf of the Estate of Dale Ross); Defendant Ted Doukas (himself and through his authorized agents and attorneys, including but not limited to attorneys John Stravato and Gary Goldstein); Defendant James F. Macri (himself and through his authorized agents and attorneys); Defendant Evelyn W. Ross (wife of Judgment Debtor and Defendant Michael L. Ross, herself and through her authorized agents, including but not limited to Michael L. Ross and his attorneys); and Defendant Giselle Teixeira, also known as Giselle Doukas (wife of Defendant Ted Doukas, herself and through her authorized agents, including but not limited to Ted Doukas and his attorneys).

6

## THE PARTIES TO THIS ACTION

16.    Plaintiff Robert T. Stooksbury, Jr., is a citizen and resident of Knox County, Tennessee.

17.    Defendant Michael L. Ross ("Ross"), a Judgment Debtor in the 2009 Federal RICO case, is a citizen and resident of Blount County, Tennessee, and may be served by process at 2624 Carpenters Grade Road, Maryville, Tennessee 37803.

18.    Defendant LTR Properties, Inc., a Judgment Debtor in the 2009 Federal RICO case, is a domestic corporation which may be served through its registered agent, Michael L. Ross.

19.    Tellico Lake Properties, L.P., a Judgment Debtor in the 2009 Federal RICO case, is a domestic limited partnership which may likewise be served through its registered agent, Michael L. Ross, at its principal executive office, which is located at 2624 Carpenters Grade Road, Maryville, Tennessee 37803, if and when it is made a party, should the United States Bankruptcy Court lift the automatic stay in the pending Chapter 7 proceeding which is referenced herein.[1]

20.    Defendant VPI Company, LLC, a Judgment Debtor in the 2009 Federal RICO case, is a domestic limited liability company which may be served through its registered agent, Michael L. Ross.

---

[1] In the pending Chapter 7 proceeding involving Tellico Lake Properties, LP, in the United States Bankruptcy Court in this district, case no. 3:12-bk-34034, Plaintiff has moved to lift the stay for the purpose of allowing Tellico Lake Properties, LP, to be made a party to this proceeding.

7

21.     Defendant Rarity Bay Realty, Inc., is a Tennessee corporation which may be served through its registered agent for service of process, Michael Ross, at 100 Rarity Bay Parkway, Vonore, Tennessee 37885.

22.     Defendant Evelyn Ross, wife of Defendant Michael L. Ross, is a citizen and resident of Blount County, Tennessee, and may be served with process at 2624 Carpenters Grade Road, Maryville, Tennessee 37803.

23.     Defendant Ted Doukas is a citizen and resident of the State of Florida and may be served with process at 19202 Cloister Lake Lane, Boca Raton, Florida 33498.

24.     Defendant Athena of SC, LLC, is a South Carolina for profit LLC, which may be served through its registered agent for service of process, United Corporate Services, Inc., 2 Office Park Court, Suite 103, Columbia, South Carolina 29223.

25.     Defendant American Harper Corporation, itself and doing business as "RP CC Management Company" and "RB CC Management Company," is a Nevada corporation which may be served through its registered agent for service of process, United Corporate Services, Inc., 202 South Minnesota St., Carson City, Nevada 89703.

26.     Defendant Likos of Tennessee, Inc. is a Tennessee corporation which may be served through its registered agent for service of process, United Corporate Services, Inc., at 401 Commerce St., Suite 710, Nashville, Tennessee 37219.

27.     Defendant Raposo Realty, LLC is a Tennessee limited liability company, which may be served through its registered agent for service of process, United Corporate Services, Inc., at 401 Commerce St., Suite 710, SunTrust Plaza, Nashville, Tennessee 37219.

8

28.     Defendant Breton Equity Company Corp. is a foreign corporation organized in the state of Nevada which may be served through its registered agent for service of process, United Corporate Services, Inc., 202 South Minnesota St., Carson City, Nevada 89703.

29.     Defendant Efastos Corp. is a New York domestic business corporation, which may be served at its principal executive offices located at 70 Split Rock Road, Syosset, New York 11791.

30.     Defendant Giselle Teixeira, also known as Giselle Doukas, wife of Defendant Ted Doukas, is a citizen and resident of the state of Florida, and may be served with process at 19202 Cloister Lake Lane, Boca Raton, Florida 33498.

31.     Defendant Rebecca Rose Ross Jordan, a Judgment Debtor in the 2009 Federal RICO case, is a citizen and resident of Blount County, Tennessee, and may be served at 600 S. Cedar St., Maryville, Tennessee.

32.     Defendant Rarity Management Company, LLC, a Judgment Debtor in the 2009 Federal RICO case, is a Tennessee limited liability company which may be served through its registered agent for service of process, Michael Ross, at 2624 Carpenters Grade Road, Maryville, Tennessee 37803.

33.     Defendant Patricia Ross, individually and as personal representative of the Estate of Dale Ross, is a citizen and resident of Blount County, Tennessee, and may be served with process at 702 S. Cedar St., Maryville, Tennessee; said Defendant is a Judgment Debtor in the 2009 Federal RICO case in her capacity as personal representative of the Estate of Dale Ross.

9

34. Defendant James F. Macri is a citizen and resident of Blount County, Tennessee, and may be served with service of process at 4236 Ridge Water Road, Louisville, Tennessee 37777.

35. Defendant Tennessee Land and Lakes, LLC, is a domestic limited liability company which may be served through its registered agent, Gregory D. Shanks, 406 Union Avenue, Suite 600, Knoxville, Tennessee 37902.

36. Defendant NJS Development Company, LLC, is a domestic limited liability company which may be served through its registered agent, Michael L. Ross, at its principal executive office, which is located at 2624 Carpenters Grade Road, Maryville, Tennessee 37803.

37. Defendant WH McCollum & Co., LLC, is a domestic limited liability company which may be served through its registered agent, Michael L. Ross, at its principal executive office, which is located at 2624 Carpenters Grade Road, Maryville, Tennessee 37803.

38. Defendant RM Company, LLC, a Judgment Debtor in the 2009 Federal RICO case, is a domestic limited liability company which may be served through its registered agent, Michael L. Ross, at its principal executive office, which is located at 2624 Carpenters Grade Road, Maryville, Tennessee 37803. To the extent this entity is inactive and/or has been administratively dissolved because of the failure to comply with requirements of the Tennessee Secretary of State, this entity should be deemed to be an unincorporated business entity owned and controlled by Defendant Michael L. Ross and/or the alter ego of Defendant Michael L. Ross and may be served through Mr. Ross at the address noted above.

10

39. Defendant Pine Mountain Partnership is a partnership and/or association which may be served through partner and/or principal Michael L. Ross at 2624 Carpenters Grade Road, Maryville, Tennessee 37803.

40. Defendant Pine Mountain Properties, GP, is a domestic partnership which may be served through its general partner and/or principal Michael L. Ross at 2624 Carpenters Grade Road, Maryville, Tennessee 37803.

41. Defendant RMT Cottages, LLC, is a domestic limited liability company which may be served through its registered agent, Michael L. Ross, at its principal executive office, which is located at 2624 Carpenters Grade Road, Maryville, Tennessee 37803.

42. Defendant RMT Properties, LLC, is a domestic limited liability company which may be served through its registered agent, Michael L. Ross, at its principal executive office, which is located at 2624 Carpenters Grade Road, Maryville, Tennessee 37803.

43. Defendant RMT Properties, LP, is a domestic limited partnership which may be served through its registered agent, Michael L. Ross, at its principal executive office, which is located at 2624 Carpenters Grade Road, Maryville, Tennessee 37803.

44. Defendant RMT Village Shops, LLC, is a domestic limited liability company which may be served through its registered agent, Michael L. Ross, at its principal executive office, which is located at 2624 Carpenters Grade Road, Maryville, Tennessee 37803.

45. Defendant PM Properties of Tennessee, LP, is a Tennessee limited liability company, which may be served through its registered agent for service of process, David W. Long, 1111 N. Northshore Dr., Suite S700, Knoxville, Tennessee 37919. To the extent this entity is inactive and/or has been administratively dissolved because of the failure to comply

11

with requirements of the Tennessee Secretary of State, this entity should be deemed to be an unincorporated business entity owned and controlled by Defendant Michael L. Ross and/or the alter ego of Defendant Michael L. Ross and may be served through Mr. Ross at the address noted above.

46.    Defendant PM Properties of Tennessee, LLC, is a Tennessee limited liability company, which may be served through its registered agent for service of process, David W. Long, 1111 N. Northshore Dr., Suite S700, Knoxville, Tennessee 37919. To the extent this entity is inactive and/or has been administratively dissolved because of the failure to comply with requirements of the Tennessee Secretary of State, this entity should be deemed to be an unincorporated business entity owned and controlled by Defendant Michael L. Ross and/or the alter ego of Defendant Michael L. Ross and may be served through Mr. Ross at the address noted above.

47.    Defendant PM Properties #2 of Tennessee, L.P. is a Tennessee limited partnership, which may be served through its registered agent for service of process, David W. Long, 1111 N. Northshore Dr., Suite S700, Knoxville, Tennessee 37919. To the extent this entity is inactive and/or has been administratively dissolved because of the failure to comply with requirements of the Tennessee Secretary of State, this entity should be deemed to be an unincorporated business entity owned and controlled by Defendant Michael L. Ross and/or the alter ego of Defendant Michael L. Ross and may be served through Mr. Ross at the address noted above.

48.    Defendant PM Properties #2 of Tennessee, LLC is a Tennessee limited liability company, which may be served through its registered agent for service of process, David W.

Long, 1111 N. Northshore Dr., Suite S700, Knoxville, Tennessee 37919. To the extent this entity is inactive and/or has been administratively dissolved because of the failure to comply with requirements of the Tennessee Secretary of State, this entity should be deemed to be an unincorporated business entity owned and controlled by Defendant Michael L. Ross and/or the alter ego of Defendant Michael L. Ross and may be served through Mr. Ross at the address noted above.

49.     Defendant PM Properties #3 of Tennessee, L.P. is a Tennessee limited partnership, which may be served through its registered agent for service of process, David W. Long, 1111 N. Northshore Dr., Suite S700, Knoxville, Tennessee 37919. To the extent this entity is inactive and/or has been administratively dissolved because of the failure to comply with requirements of the Tennessee Secretary of State, this entity should be deemed to be an unincorporated business entity owned and controlled by Defendant Michael L. Ross and/or the alter ego of Defendant Michael L. Ross and may be served through Mr. Ross at the address noted above.

50.     Defendant PM Properties #3 of Tennessee, LLC is a Tennessee limited partnership, which may be served through its registered agent for service of process, David W. Long, 1111 N. Northshore Dr., Suite S700, Knoxville, Tennessee 37919. To the extent this entity is inactive and/or has been administratively dissolved because of the failure to comply with requirements of the Tennessee Secretary of State, this entity should be deemed to be an unincorporated business entity owned and controlled by Defendant Michael L. Ross and/or the alter ego of Defendant Michael L. Ross and may be served through Mr. Ross at the address noted above.

13

51.     Defendant M&D Ross Rentals, is a partnership or association controlled by Defendant Michael Ross which may be served at the address for Mr. Ross noted above.

52.     Defendant OR Properties, LLC, is a domestic limited liability company which may be served through its registered agent, Michael L. Ross, at its principal executive office, which is located at 2624 Carpenters Grade Road, Maryville, Tennessee 37803. To the extent this entity is inactive and/or has been administratively dissolved because of the failure to comply with requirements of the Tennessee Secretary of State, this entity should be deemed to be an unincorporated business entity owned and controlled by Defendant Michael L. Ross and/or the alter ego of Defendant Michael L. Ross and may be served through Mr. Ross at the address noted above.

53.     Defendant CC Properties, LLC, is a domestic limited liability company which may be served through its registered agent, Michael L. Ross, at its principal executive office, which is located at 2624 Carpenters Grade Road, Maryville, Tennessee 37803.

54.     Defendant Consumer Research Company is a domestic business entity or association which may be served through Evelyn W. Ross at 2624 Carpenters Grade Road, Maryville, Tennessee 37803.

55.     Defendant RFD, LLC, is a domestic limited liability company which may be served through its registered agent, Michael L. Ross, at its principal executive office, which is located at 2624 Carpenters Grade Road, Maryville, Tennessee 37803.

56.     Defendant HDP Properties, LLC, is a Wyoming limited liability company which may be served through its registered agent, WyomingRegisteredAgent.com, Inc., 1621 Central Avenue, Cheyenne, Wyoming 82001. To the extent this entity is inactive and/or has been

14

administratively dissolved because of the failure to comply with requirements of the Wyoming Secretary of State, this entity should be deemed to be an unincorporated business entity owned and controlled by Defendant Michael L. Ross and may be served through Mr. Ross at the address noted above.

57. Defendant Vonore Properties, LLC, is a domestic limited liability company which may be served through its registered agent, Michael L. Ross.

58. Defendant WFD Company, Inc. is a Tennessee domestic corporation, which may be served through its registered agent for service of process, David T. Black, 329 Cates Street, Maryville, Tennessee 37801. To the extent this entity is inactive and/or has been administratively dissolved because of the failure to comply with requirements of the Tennessee Secretary of State, this entity should be deemed to be an unincorporated business entity owned and controlled by Defendant Michael L. Ross and/or the alter ego of Defendant Michael L. Ross and may be served through Mr. Ross at the address noted above.

59. Defendant R.P.M. Recoveries, Inc., which may be served through its principal officer / agent Ted Doukas at Mr. Doukas' address above.

60. Defendant RRT Properties, LLC, is a Tennessee limited liability company, which may be served through its registered agent for service of process, Wendy Joiner, 416 Rule Street, Maryville, Tennessee 37804. To the extent this entity is inactive and/or has been administratively dissolved because of the failure to comply with requirements of the Tennessee Secretary of State, this entity should be deemed to be an unincorporated business entity owned and controlled by Defendant Michael L. Ross and/or the alter ego of Defendant Michael L. Ross and may be served through Mr. Ross at the address noted above.

15

61.     Defendant Tellico Communities, LLC. is a Tennessee domestic corporation, which may be served through its registered agent for service of process, Michael L. Ross, 2624 Carpenters Grade Road, Maryville, Tennessee 37803. To the extent this entity is inactive and/or has been administratively dissolved because of the failure to comply with requirements of the Tennessee Secretary of State, this entity should be deemed to be an unincorporated business entity owned and controlled by Defendant Michael L. Ross and/or the alter ego of Defendant Michael L. Ross and may be served through Mr. Ross at the address noted above.

62.     Defendant RCCA Company, Inc. is a Tennessee domestic corporation, which may be served through its registered agent for service of process, Michael L. Ross, 2624 Carpenters Grade Road, Maryville, Tennessee 37803.

63.     Defendant RMT CH Properties, LLC, is a domestic limited liability company which may be served through its registered agent for service of process, Michael L. Ross, 2624 Carpenters Grade Road, Maryville, Tennessee 37803.

64.     Defendant LTR Marina, LLC is a Tennessee limited liability company, which may be served through its registered agent for service of process, Michael L. Ross, 2624 Carpenters Grade Road, Maryville, Tennessee 37803. To the extent this entity is inactive and/or has been administratively dissolved because of the failure to comply with requirements of the Tennessee Secretary of State, this entity should be deemed to be an unincorporated business entity owned and controlled by Defendant Michael L. Ross and/or the alter ego of Defendant Michael L. Ross and may be served through Mr. Ross at the address noted above.

16

## STATEMENT OF FACTS

### The Underlying Litigation and Judgment in the 2009 Federal RICO Case

65.     On or about April 2, 2009, Mr. Stooksbury filed a damages action in Blount County Chancery Court, case no. 09-057, against Defendants Michael Ross, LTR Properties, Inc., Rarity Management Company, LLC, and others for fraud and conversion, as well as other causes of action.

66.     At all times relevant to this action, Rarity Management Company, LLC, was owned by Defendant Rebecca Ross Jordan, Defendant Michael Ross' niece.

67.     Following additional investigation into the conduct of Mr. Ross, Ms. Jordan, and others, Mr. Stooksbury filed the 2009 Federal RICO case on November 18, 2009, against the Judgment Debtors, as well as other individuals, outlining several causes of action for damages arising out of the operation of an illegal real estate enterprise and conspiracy involving several "Rarity" real estate developments.

68.     During the pendency of the 2009 Federal RICO case, Mr. Stooksbury learned of some transfers of property and assets made by and between some of the Judgment Debtors and their relatives and/or affiliates for which the Judgment Debtors did not receive equivalent value and which, on their face, appeared to be fraudulent.  Accordingly, in the summer of 2011, Plaintiff filed actions and liens *lis pendens* in several counties in Tennessee where the Judgment Debtors' property was located.  These actions specifically referenced Plaintiff's pending 2009 Federal RICO case and provided additional actual and constructive notice of Plaintiff's pending 2009 Federal RICO claims to all of the Defendants herein, as well as to others.  True copies of pleadings filed in those actions are of record in the 2009 Federal RICO case [Doc. 291-13].

17

69.     On or about March 18, 2011, New York attorney John Stravato appeared *pro hac vice* for the Defendants in the Blount County case referenced above; a true copy of Mr. Stravato's application is in the record as Doc. 291-8 in the 2009 Federal RICO case and is hereto attached as **Exhibit 3**. In the referenced motion and application, Mr. Stravato listed his office address as "240 West Old Country Road, Hicksville, NY."

70.     On March 24, 2011, John Stravato also appeared in the 2009 Federal RICO case as lead counsel of record for all of the Judgment Debtors [Doc. 128]; a true copy of the Order granting Mr. Stravato's motion to appear *pro hac vice* is hereto attached as **Exhibit 4**).

71.     Judgment Debtor Michael Ross had come to know Mr. Stravato on account of Mr. Ross' business relationship and friendship with Defendant Ted Doukas; Mr. Stravato had known and previously worked with Mr. Doukas for many years and Mr. Stravato's son had previously engaged in business transactions with Mr. Doukas.

72.     During the time period after the Judgment Debtors had engaged Mr. Stravato to represent them in the referenced state and federal cases, the Defendants and Judgment Debtors were cited by both the Blount County Chancery Court and the United States District Court for contumacious and/or willful discovery violations, as the following orders reflect: the Blount County Chancery Court order entered on August 24, 2011, a true copy of which is filed in the record in the 2009 Federal RICO case as Doc. 291-7; the Report and Recommendation filed by the United States Magistrate Judge on September 28, 2011, which is of record in the 2009 Federal RICO case as Doc. 185; and the orders and opinions entered by the United States District Court on November 21, 2011, and January 30, 2012, which are of record in the 2009 Federal RICO case as Docs. 209, 249 and 250, respectively.

18

73.     Further, during the same time period the Courts were holding the Judgment Debtors accountable for the referenced discovery violations, Defendants Michael Ross, Evelyn Ross, Rebecca Ross Jordan, Patricia Ross, Ted Doukas, Giselle Doukas, and James Macri (as well as various business entities of theirs), themselves and through their agents, including but not limited to attorneys John Stravato, Gary Goldstein, and others, were facilitating and participating in an illegal and improper scheme to transfer millions of dollars of assets for the purpose of hindering, delaying or defrauding Mr. Stooksbury.

74.     For example, the Judgment Debtors' counsel, Mr. Stravato, along with local counsel, personally appeared on behalf of all of the Judgment Debtors at a hearing on September 26, 2011, before Magistrate Judge Guyton concerning the Judgment Debtors' discovery violations. As Judge Guyton's subsequent opinion reflects, Mr. Stravato admitted during the hearing that a significant amount of documents had not been produced and offered no logical explanation for it.

75.     Just four days before the hearing, on September 22, 2011, Mr. Stravato had facilitated an agreement for the initial set of fraudulent conveyances involving the Judgment Debtors' assets that are the subject of this action.

76.     Further, shortly after Judge Guyton filed his Report and Recommendation recommending entry of a default judgment against the Judgment Debtors for willful discovery violations, the Judgment Debtors, themselves and with the assistance of Mr. Stravato and others, engaged in a series of fraudulent conveyances with other Defendants herein over the next several weeks.

19

77. In this manner, while the Judgment Debtors were frustrating and delaying Mr. Stooksbury's prosecution of the 2009 Federal RICO case, the Judgment Debtors were fraudulently conveying millions of dollars in real property and assets in an effort to hinder, delay and defraud Mr. Stooksbury.

78. Following entry of a default judgment against the Judgment Debtors on January 30, 2012, [Doc. 250], an Amended Final Pretrial Order was entered in the 2009 Federal RICO case [Doc. 342], which established certain facts as a matter of law, including: that the Judgment Debtors, through an illegal real estate enterprise and conspiracy lead by Michael Ross, generated significant cash flow from various "Rarity" real estate developments, which were operated essentially as a pyramid / Ponzi scheme; that the illegal real estate enterprise and conspiracy generated in excess of 100 million dollars in cash flow in 2007 alone; that the illegal real estate enterprise and conspiracy violated 18 U.S.C. §§ 1962(c) and (d); that Defendants committed multiple related acts of mail fraud and wire fraud, knew that their predicate acts were part of a pattern of racketeering activity, and agreed to the commission of those acts; and that the wrongful conduct was the direct, proximate and legal cause of the damages and losses suffered by Mr. Stooksbury.

79. As an illustration of how the Judgment Debtors profited from the illegal real estate enterprise and conspiracy that was the subject of the 2009 Federal RICO case, Defendant Michael Ross' financial statement for the calendar year 2006 reflected a net worth of $127,000,000. Doc. 479, Tr. 2/29/12, Ex. 43f.

80. A jury trial was held beginning February 21, 2012, to determine the amount of Mr. Stooksbury's compensatory and punitive damages; verdicts were returned specifying those

amounts on February 28, 2012, and March 1, 2012, respectively. A Judgment was entered by the clerk in accordance with the jury verdicts on March 6, 2012 [Doc. 390] (Exhibit 1, *supra*).

81.     Subsequently, upon being apprised of numerous conveyances by the Judgment Debtors which the Court found to be likely fraudulent, the Court entered an order precluding Defendants from making further conveyances and appointed a Receiver to identify and preserve the Judgment Debtors' assets and to investigate the matters further [Doc. 548] (Exhibit 2, *supra*); see also [Doc. 586]. The Receiver filed his initial report on September 7, 2012 [Doc. 732].

82.     As the record in the underlying litigation reflects, by no later than November 18, 2009, as to all of the Judgment Debtors (and by April 2, 2009, as to Judgment Debtors Michael Ross, Rebecca Jordan, LTR Properties, Inc., and Rarity Management Company, LLC), Mr. Stooksbury was a "creditor" who had a "claim" against the Judgment Debtors as those terms are known, understood and defined by the statutory and common laws of the United States of American and the State of Tennessee, including but not limited to T.C.A. §§ 66-3-302, 66-3-305, and 66-3-306 of the Tennessee Uniform Fraudulent Transfer Act.

83.     In the fall and winter of 2011, and extending through the present, Judgment Debtor Michael Ross, Defendant Ted Doukas, and Defendant Jim Macri, themselves and through their agents (including but not limited to attorneys John Stravato, Gary Goldstein, and others), and for themselves and on behalf of various business entities in which they had an interest, including Tellico Lake Properties, LP, LTR Properties, Inc., VPI Company, LLC, Athena of SC, LLC, American Harper Corporation, and Tennessee Land and Lakes, LLC, devised and participated in a scheme by which they would associate and collaborate to divide amongst themselves various properties, property rights, and future income streams from operations and

21

sales at Rarity real estate developments, including those known as Rarity Bay and Rarity Enclave, as well as other properties; Defendants Rebecca Ross Jordan, Patricia Ross, Evelyn Ross, and Giselle Doukas, as well as their agents and business entities and the other Defendants herein, facilitated, supported and participated in the scheme ("the Illegal Rarity Conveyance Enterprise and Conspiracy").

84.     Much of the improper conduct and many of the predicate acts committed by and on behalf of the individuals and entities referenced in paragraph 82 in furtherance of the Illegal Rarity Conveyance Enterprise and Conspiracy occurred during the months of August, September, October, November and December of 2011, and January, February and March of 2012, which were the months leading up to the Judgment in favor of Mr. Stooksbury against the Judgment Debtors in the 2009 Federal RICO case.

### Improper Conduct and Predicate Acts in Furtherance of the Illegal Rarity Conveyance Enterprise and Conspiracy in Violation of 18 U.S.C. § 1962(c) and (d)

#### A.     Overview and Background

85.     During the fall of 2011, Defendants Michael Ross, Ted Doukas, and James Macri, themselves and through their agents and on behalf of several business entities in which each had an interest, including Judgment Debtors / Defendants Tellico Lake Properties, LP, LTR Properties, Inc., and VPI Company, LLC, and Defendants Athena of SC, LLC, and Tennessee Land and Lakes, LLC, entered into a multi-party agreement, collectively agreeing that substantially all of the Judgment Debtors' assets in the development known as Rarity Enclave would be transferred to Tennessee Land and Lakes, LLC, an entity owned and/or controlled in pertinent part by James Macri, and substantially all of the Judgment Debtors' other assets, including assets in the development known as Rarity Bay, would be transferred to one or more

22

companies owned or controlled by Mr. Ross and/or Mr. Doukas. As is outlined in greater detail below, the cornerstone of the multi-party agreement was Tennessee Land and Lakes' improper and fraudulent acquisition of the declarant's rights at Rarity Enclave from VPI Company, LLC, one of Mr. Ross' business entities, which in turn was exchanged for the various other components of the deal for the benefit of Mr. Ross, Mr. Doukas, their relatives, and various business entities controlled by them.

86.     With regard to the transactions generally referenced in paragraph 85 above, Plaintiff specifically alleges that the Judgment Debtor / Defendants: (a) engaged in the transactions with the intent to hinder, delay and defraud Plaintiff; (b) did not receive a reasonably equivalent value in exchange for the transactions and were engaged in, or were about to engage in, transactions which rendered said Judgment Debtors substantially insolvent; (c) were transferring assets to entities which were affiliates, in that the entities which obtained the respective Judgment Debtor's assets had agreed to exercise control over substantially all of each such Judgment Debtor's remaining assets as part of the referenced transactions and had formed an association and/or joint venture or enterprise for the purpose of carrying out these transactions; and (d) violated 18 U.S.C. §§ 1961 – 1968. Further, these transactions were key components of the Illegal Rarity Conveyance Enterprise and Conspiracy described herein and served as the foundation which enabled the other transactions in the scheme to be accomplished thereafter.

87.     During the operation of the various Rarity developments generally referenced in the 2009 Federal RICO case, Michael Ross became acquainted with two other individuals, Ted Doukas and James Macri.

23

88.     On or about January 5, 2010, Mr. Doukas formed an entity named American Harper Corporation in Nevada, listing his address as 70 Split Rock Road in Syosset, New York. Plaintiff specifically alleges that American Harper Corporation was used by Mr. Doukas and other Defendants to commit acts in furtherance of the Illegal Rarity Conveyance Enterprise and Conspiracy during the time period relevant to this action.

89.     On or about August 11, 2010, Ted Doukas formed a business entity in Tennessee named Raposo Realty, LLC, which Mr. Doukas initially located in Mr. Ross' offices at 1010 William Blount Drive in Maryville, Tennessee; Mr. Doukas listed himself as registered agent for service of process and listed his address for service of process as Mr. Ross' offices at 1010 William Blount Drive in Maryville, Tennessee. Plaintiff specifically alleges that Raposo Realty, LLC was used by Mr. Doukas and other Defendants to commit acts in furtherance of the Illegal Rarity Conveyance Enterprise and Conspiracy during the time period relevant to this action.

90.     On or about March 29, 2011, Mr. Doukas formed an entity named Athena of SC, LLC, in South Carolina, listing Mr. Doukas' address as 4713 Villa Mare Lane, Naples, Florida 34103, and listing United Corporate Services, Inc., as initial agent for service of process. Plaintiff specifically alleges that Athena of SC, LLC was used by Mr. Doukas and other Defendants to commit acts in furtherance of the Illegal Rarity Conveyance Enterprise and Conspiracy during the time period relevant to this action.

91.     On or about November 22, 2011, Mr. Doukas formed a business entity in Tennessee named Likos of Tennessee, Inc., listing its principal office address as 19202 Cloister Lake Lane, Boca Raton, FL 33498-4856. United Corporate Services, Inc., was designated as agent for service; Mr. Doukas' wife, Giselle Teixeira (also known as Giselle Teixeira Doukas),

24

was listed as President; and the directors specified were Mr. Doukas and his wife. Plaintiff specifically alleges that Likos of Tennessee, Inc. was owned by Giselle Doukas at all relevant times, but was used by Mr. Doukas and other Defendants to commit acts in furtherance of the Illegal Rarity Conveyance Enterprise and Conspiracy.

92.     During 2010 and continuing thereafter through the date of the filing of this action, Mr. Ross and Mr. Doukas, through various entities controlled by them, engaged in various transactions with one another involving real property and other assets and discussed various schemes through which they could associate to maintain control of the Judgment Debtors' assets.

93.     In 2010, Mr. Ross and Mr. Doukas worked together to facilitate Mr. Doukas' acquisition of 47 lots at Rarity Bay, through an entity owned by Mr. Doukas. These lots had been owned previously by Tellico Lake Properties, LP, an entity controlled by Mr. Ross. Tellico Lake Properties had conveyed the lots by Quitclaim Deed (WD330/212-213) in 2008 to LTR Properties, Inc., an entity owned entirely by Mr. Ross. The next day LTR Properties, Inc. conveyed by Warranty Deed (WD330/214-218) the same lots to Glenn Wright Homes (Tennessee), LLC; Glenn Wright was at the time a business associate of Ted Doukas. Mr. Ross signed as Affiant attesting the value of the property at the time of the transfer to Glenn Wright's entity to be $5,170,000. Mountain Commerce Bank thereafter loaned Glenn Wright Homes (Tennessee), LLC $3,360,000 on June 13, 2008, and subsequently assigned the note to First State Financial on December 28, 2009 (M209/139-144). Following a default by Glenn Wright shortly thereafter, a Successor Trustee's Deed (WD344/331-332) conveyed the 47 lots on October 8, 2010, to Raposo Realty, LLC, listing Raposo Realty, LLC's address as "1010 William Blount

Drive, Maryville, TN 37801," which was the location of Mr. Ross' offices in Maryville (which were being shared by Mr. Doukas).

94.     Mr. Ross and Mr. Doukas personally guaranteed the new loan which Raposo Realty, LLC, obtained to finance the 47 lots at Rarity Bay referenced above. Additionally, Mr. Ross arranged for Raposo Realty, LLC, not to have to pay Rarity Bay Homeowners' Association fees on the 47 lots that were conveyed to Raposo Realty, LLC.

95.     In the 2010 through 2011 timeframe, Defendant James Macri and Mr. Ross had several discussions about potential dealings where Mr. Macri, through a business entity in which Mr. Macri had or would have an interest, would acquire an interest in one or more of the Rarity developments for the purpose of aggressively marketing and selling lots at a significant discount.

96.     Also during that time period, Mr. Macri, through a business entity controlled by him, considered purchasing one or more bank notes encumbering one or more Rarity developments and selling lots following foreclosure. However, one of the impediments to this approach considered by Mr. Macri was how to deal with the "Declarant's" or "Developer's" rights that were recorded for each of the Rarity developments, which included covenants, conditions and restrictions with the property that were generally not subject to bank notes. Accordingly, Mr. Macri was concerned about paying money to acquire bank notes to obtain title to property in a Rarity development, only to have to pay Mr. Ross or an entity controlled by Mr. Ross membership fees and other costs each time a lot would sell. The substance of Mr. Macri's concerns on this subject is summarized in the letter sent by Mr. Macri on behalf of Tennessee Land and Lakes, LLC, to First Bank on September 8, 2011, a true copy of which is hereto attached as **Exhibit 5**.

26

97.     Meanwhile, at various times in 2010 and 2011, Mr. Ross and/or Mr. Doukas had advised bank representatives that Mr. Doukas might be willing to buy one or more of the bank notes encumbering the Rarity developments which were in default, after which Mr. Ross would remain involved with the development. However, the banks which were approached in that manner were not interested in dealing with Mr. Doukas and Mr. Ross on that basis.

98.     Prior to and/or during the fall of 2011, Defendants Michael Ross, Ted Doukas and James Macri were aware that there were SunTrust Bank promissory notes encumbering property at Rarity Bay owned by Judgment Debtors Tellico Lake Property, LP, and LTR Properties, Inc., which were in default. During that same time period, said Defendants also were aware or became aware that a First Bank note encumbered the property at Rarity Enclave and that the note was in default. Rarity Enclave was owned by VPI Company, LLC -- an entity owned 100% by Mr. Ross. Said Defendants knew and/or understood that Mr. Ross was a personal guarantor on both the SunTrust notes and the First Bank note.

99.     One of the SunTrust notes referenced in paragraph 98 encumbered approximately 120 lots at Rarity Bay owned by Defendant Tellico Lakes Properties, LP, and had been made on or about August 1, 2008, for approximately $5,885,000 (which amount was subsequently increased). The other SunTrust note encumbered approximately 11 condominiums owned by Defendant LTR Properties, Inc., and had been made on or about October 15, 2006, for approximately $3,000,000. Subsequently, said Defendants defaulted on both notes, leaving a total balance owing of nearly $7,000,000, including interest and costs.

100.     The First Bank note referenced in paragraph 98 encumbered approximately 99 single family residential lots and the construction of infrastructure improvements at Rarity

27

Enclave and had been made by VPI Company, LLC (and Mr. Ross) on or about December 7, 2007, for approximately $4,484,000. Said Defendants subsequently defaulted on the First Bank note and as of January 21, 2010, more than $4,300,000 remained owing, not including interest and costs which accrued thereafter.

101. Following default on the Rarity Enclave note, First Bank sued VPI Company, LLC, and Michael L. Ross on January 25, 2010, in Knox County Chancery Court, Docket No. 176927-1. Said Defendants disputed the suit and filed an answer and counter-claim against First Bank on March 15, 2010.

102. Under the threat of foreclosure proceedings by First Bank, VPI Company, LLC, through Mr. Ross as its Chief Manager, filed a Chapter 11 Bankruptcy action in the United States Bankruptcy Court for the Eastern District of Tennessee on or about August 24, 2010. Subsequently, First Bank obtained relief from the automatic stay from the Bankruptcy Court and was allowed to continue to prosecute the referenced Chancery Court action.

**B.    The Multi-Party Agreement Between James Macri, Michael Ross, and Ted Doukas in the Fall of 2011 and the Conveyance of the Declarant's Rights for Rarity Enclave Outside of the Pending Bankruptcy Action.**

103. By the fall of 2011, the First Bank case on the Rarity Enclave note was still pending; the SunTrust notes encumbering property at Rarity Bay remained in default (but without pending litigation or foreclosure proceedings); and Defendant James Macri had contacted both First Bank and SunTrust to explore the potential of buying the referenced bank notes.

28

104. It was during this time period that negotiations took place that resulted in a multi-party agreement that served as the foundation for the Illegal Rarity Conveyance Enterprise and Conspiracy referenced in paragraphs 83 through 86 above.

105. During the course of the negotiations in the fall of 2011 between Defendants James Macri, Michael Ross, Ted Doukas, said Defendants' agents, and by imputation the business entities controlled by them, all parties knew that VPI Company, LLC, was in Chapter 11 bankruptcy in the United States District Court for the Eastern District of Tennessee.

106. During the course of those negotiations, Defendants James Macri, Michael Ross, Ted Doukas, said Defendants' agents, and by imputation the business entities controlled by them, also knew that the Covenants, Conditions and Restrictions for Rarity Enclave ("the Declarant's Rights for Rarity Enclave") were owned by VPI Company, LLC, and were a valuable asset belonging to VPI Company, LLC.

107. During the course of the negotiations, Defendants James Macri, Michael Ross, Ted Doukas, said Defendants' agents, and by imputation the business entities controlled by them, had actual knowledge that an integral part of the deal being negotiated was the acquisition of the Declarant's Rights for Rarity Enclave by Tennessee Land and Lakes, LLC, from VPI Company, LLC.

108. During the course of the negotiations, Defendants James Macri, Michael Ross, Ted Doukas, said Defendants' agents, and by imputation the business entities controlled by them, understood that unless Tennessee Land and Lakes, LLC, acquired the Declarant's Rights for Rarity Enclave from VPI Company, LLC, as part of the transaction, the deal would not go forward and Tennessee Land and Lakes would not assign the SunTrust notes to an entity

29

specified by attorney John Stravato (who at the time was counsel of record for Judgment Debtors Michael L. Ross, Tellico Lake Properties, LP, and LTR Properties, Inc., as well as the other Judgment Debtors in the 2009 Federal RICO case).

109.    During the course of the referenced negotiations, it was the goal and intention of Defendants James Macri, Michael Ross, Ted Doukas, and entities controlled by them to facilitate and enter into a multi-party agreement in the fall of 2011 to divide among themselves the assets of the Judgment Debtors in the developments known as Rarity Bay and Rarity Enclave, as well as other assets, in derogation of Mr. Stooksbury's pending claims in the United States District Court and liens *lis pendens*.

110.    The multi-party deal negotiated and reached between Defendants James Macri, Michael Ross, Ted Doukas, and the entities controlled by them included the following components:  (1) allowing Tennessee Land and Lakes, LLC, to obtain the Declarant's Rights for Rarity Enclave from VPI Company, LLC, fraudulently, outside of VPI Company, LLC's pending bankruptcy action, without notice to the United States Bankruptcy Court for the Eastern District of Tennessee in violation of federal law; (2) withholding the recording of the transfer of said Declarant's Rights from VPI Company, LLC, to Tennessee Land and Lakes, LLC, until just after VPI Company, LLC's bankruptcy action was dismissed; (3) enabling Tennessee Land and Lakes, LLC, to close on the purchase of the First Bank notes encumbering Rarity Enclave and then to make a credit bid on the property at foreclosure with the assurance that Tennessee Land and Lakes, LLC, had already secured ownership and control of the Declarant's Rights for Rarity Enclave; (4) having Tennessee Land and Lakes, LLC, obtain and then assign the SunTrust notes encumbering property at Rarity Bay to an entity designated by Defendant Michael Ross'

30

attorney, John Stravato, for the same amount Tennessee Land and Lakes, LLC, had agreed to pay SunTrust for the notes (approximately $1,560,000); (5) upon Tennessee Land and Lakes, LLC, being paid back for the SunTrust notes by a business entity designated by Mr. Ross' attorney, the designated entity would then enter into friendly agreed judgments against Defendants Tellico Lake Properties, LP, LTR Properties, Inc., and Michael L. Ross in state court in Knox County for well more than five times the amount being paid for the SunTrust notes; (6) near the same time, Tennessee Land and Lakes, LLC, would enter into a friendly agreed judgment against VPI Company, LLC, and Michael Ross in state court for the deficiency on the First Bank note and then assign that Judgment to a business entity designated by Mr. Ross' attorney; and (7) the friendly judgments in favor of the business entity designated by Mr. Ross' attorney would then be used as a pretext for transferring all or substantially all of the assets of Tellico Lake Properties, LP, LTR Properties, Inc., and Michael L. Ross, (as well as related entities) to entities as specified and agreed by Mr. Ross and Mr. Doukas.

111.    In accordance with an agreement between Mr. Ross and Mr. Doukas, the entity Mr. Ross' attorney (Mr. Stravato) specified when the initial components of the deal were being finalized in late September of 2011, was an entity called Athena of SC, LLC, an entity owned by Mr. Doukas. The address Mr. Stravato listed as the address for Athena of SC, LLC, on the documents was Mr. Stravato's office address (the same address listed on Mr. Stravato's application to appear *pro hac vice* for Defendants Michael Ross and LTR Properties, Inc. and others. *See* Exhibit 3, *supra*); and Mr. Doukas ultimately signed the documents on behalf of Athena of SC, LLC.

31

112.    The Defendants referenced in paragraphs 109 and 110 committed the acts necessary to accomplish the steps referenced in paragraph 110 through multiple communications between them and their agents while using the phones, the internet, wire, and/or mail during a time period which included, but is not limited to, August 26, 2011, and March 20, 2012, as well as acts constituting bankruptcy fraud; each such communication and act constitutes a separate predicate act in furtherance of the Illegal Rarity Conveyance Enterprise and Conspiracy in violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§1961, *et seq.*, (RICO).

113.    The initial steps taken in furtherance of the multi-party agreement referenced above were taken in August and September of 2011.

114.    For example, on August 26, 2011 – just two days after the entry of the discovery order referenced above in paragraph 79 finding that Defendants Michael Ross, LTR Properties, LLC, and others had engaged in discovery abuse in the Blount County Chancery Court case, Mr. Ross, Mr. Macri, and Mr. Doukas exchanged e-mails with the Subject Line "Rarity Bay" for the purpose of discussing the initial steps in the Illegal Rarity Conveyance Enterprise and Conspiracy.

115.    Specifically, at 9:24 a.m. on August 26, 2011, Mr. Ross e-mailed Mr. Macri the following message, reflecting how Mr. Ross intended to set up a new entity that would enable him to continue to participate in the operation of the Rarity Bay development after the SunTrust notes had been purchased at a steep discount by Tennessee Land and Lakes, LLC, and then assigned to the new company in which Mr. Ross would be an integral part:

> Jim, As I understand the deal, Your company will purchase the SunTrust
> Notes @ Rarity Bay which are owned by Tellico Lake Properties, L.P. and

32

LTR Properties, Inc. and the collateral that is encumbered by those notes will be placed into a New Company @ cost and I or my assignee will own 30% of the new company. We will determine a budget in advance for Revenues and Expenses from sale of the collateral and use this as a basis to pay out the profits on each sale of the property as they occur; e.g. if total sales revenue is projected @ $4,000,000 and expenses are $3,000,000, there is $1,000,000 profits -- 25% of sales revenue is profit. (e.g.) A $100,000.00 sales would result in $25,000 profit of which 30% ($7,500.) would pay out to me each closing). Also any deficiency that is realized from the SunTrust notes will be transferred to me or my assignee upon request. If this accurately represents our agreement please acknowledge by return e-mail. Regards.

A true copy of this e-mail is hereto attached as **Exhibit 6**.

116. Shortly thereafter, the exact same e-mail was sent to Mr. Macri only a few hours later, on August 26, 2011, at 1:40 p.m., but this time signed by Ted Doukas. A true copy of this e-mail is hereto attached as **Exhibit 7**.

117. During this same general time period, in furtherance of the Illegal Rarity Conveyance Enterprise and Conspiracy, James Macri, on behalf of Tennessee Land and Lakes, LLC, was negotiating for the purchase of the two notes referenced above from SunTrust at a significant discount from the face value of the notes; subject to closing, Tennessee Land and Lakes, LLC, negotiated to buy both of the referenced notes for the total amount of $1,560,000.

118. During the same timeframe, Jim Macri, on behalf of Tennessee Land and Lakes, LLC, was also negotiating with First Bank for the acquisition of its note encumbering Rarity Enclave.

119. On September 8, 2010, Tennessee Land and Lakes, LLC, by James F. Macri, Chief Manager, wrote the letter to First Bank referenced in paragraph 96 above, enclosing an offer to purchase the subject First Bank Promissory Note and affirmatively stating that Tennessee Land and Lakes' acquisition of the note and potential acquisition of the property at

33

foreclose would be subject to the developers' rights / covenants, conditions and restrictions for Rarity Enclave which (1) "require lot purchasers to buy a 'social membership'"; (2) require Tennessee Land and Lakes to "immediately begin paying association dues" on all lots; and (3) give Mr. Ross "virtual veto rights over any construction in Rarity Enclave by virtue of his total control of the Architectural Control Committee." In that same letter, Mr. Macri states that Tennessee Land and Lakes, LLC, believes "these rights survive any foreclosure and unless monetary concessions of at least $300,000 are made to Ross, only litigation can resolve this issue which takes time and money." Exhibit 5, *supra.*

120. Based upon information and belief, Tennessee Land and Lakes ultimately negotiated a purchase price of approximately $1,250,000 for the First Bank note, subject to closing.

121. During the same time period that Tennessee Land and Lakes, LLC, was negotiating with SunTrust and First Bank for the potential acquisition of the referenced notes, Tennessee Land and Lakes, LLC (through James Macri) was negotiating with the other participants in the initial steps of the Illegal Rarity Conveyance Enterprise and Conspiracy for the transfer of the Declarant's Rights at Rarity Enclave by VPI Company, LLC, to Tennessee Land and Lakes, LLC, outside the purview of the United States Bankruptcy Court in the pending Chapter 11 bankruptcy proceeding involving VPI Company, LLC.

122. To confirm the multi-party agreement generally referenced above, on September 20, 2011, Tennessee Land and Lakes' attorney and agent forwarded a "Multi-Party Agreement" to Mr. Ross' attorney, John Stravato, which reflected that Tennessee Land and Lakes had agreed to transfer the SunTrust notes at Rarity Bay to an as yet undesignated buyer (to be designated by

34

Mr. Ross' attorney) in exchange for: (1) the undesignated buyer paying Tennessee Land and Lakes the same amount Tennessee Land and Lakes was paying for the SunTrust note; and (2) Mr. Ross executing a "Binding Cooperation Agreement" with Tennessee Land and Lakes regarding Rarity Enclave in Monroe County, Tennessee, which required Mr. Ross to convey the Declarant's Rights and Rarity Enclave to Tennessee Land and Lakes. That same agreement provided for a closing date in November of 2011. A true copy of this proposed "Multi-Party Agreement" is hereto attached as **Exhibit 8**.

123.    That same afternoon, immediately after sending the draft agreement referenced in paragraph 122, Tennessee Land and Lakes, LLC, through its attorney, sent an e-mail to Mr. Ross' attorney enclosing a proposed "Cooperation Agreement," which was "an exhibit to the (multi-party) agreement" and which required VPI to transfer the Developer's Rights at Rarity Enclave to Tennessee Land and Lakes, LLC. The e-mail emphasized that "everything in this deal is contingent upon this Cooperation Agreement with Mike Ross." A true copy of this e-mail and attachment is hereto attached as **Exhibit 9**.

124.    The terms of the Cooperation Agreement specifically recite that upon Tennessee Land and Lakes' acquisition of the First Bank note, "Ross shall cause VPI Company, LLC, to, and VPI does hereby transfer and assign unto (Tennessee Land and Lakes, LLC) all of the developer rights, and all of VPI's rights as declarant or developer under any and all restrictive covenants affecting (Rarity) Enclave . . . and does hereby irrevocably appoint (Tennessee Land and Lakes) as declarant under the "covenants, conditions, restrictions and easements for (Rarity Enclave). In exchange, Tennessee Land and Lakes agreed "not to seek collection of the (First Bank) note from Ross and transfer the guaranty to Ross or his assigns upon his request."

35

125. The Cooperation Agreement also expressly provided that "upon the transfer of the (First Bank) note to (Tennessee Land and Lakes, LLC), Ross shall cause VPI to file the appropriate documents and pursue the dismissal of its bankruptcy."

126. The documents also reflect that as part of and in conjunction with transactions referenced in paragraphs 130, 131, and 132 above, upon Tennessee Land and Lakes receiving the declarant rights to Rarity Enclave through its purchase of the First Bank note, Mr. Ross' designee (which turned out to be Mr. Doukas, through Athena of SC, LLC, an entity controlled by him) would obtain both (a) the SunTrust notes encumbering property at Rarity Bay and (b) control over Mr. Ross' guarantee of the First Bank note and the resulting deficiency on the First Bank note.

127. As has been generally referenced above, the purpose of these components was to enable and to facilitate Mr. Ross' designee, Mr. Doukas, and Mr. Ross, through their respective entities, to enter into friendly judgments in state court immediately following the closing on the referenced bank notes (which was ultimately accomplished, with the assistance and participation of Mr. Macri's attorney and agent).

128. In the late morning of September 21, 2011, James Macri sent Ted Doukas an e-mail stating: "Ted, SunTrust is requiring I sign the agreement and wire the money before 2pm today. Let's get this done now . . . . I need you to wire the $230,000 to (my attorney) now." A true copy of this e-mail is hereto attached as **Exhibit 10**.

129. When the "final version" of the Multi-Party Agreement was sent to Mr. Ross' attorney, Mr. Stravato, by Tennessee Land and Lakes' counsel by e-mail on September 21, 2011,

36

at 1:23 p.m., the name of the "buyer" who was purportedly purchasing the SunTrust notes from Tennessee Land and Lakes, LLC, still had yet to be specified.

130.    Later that same day, at 2:29 p.m., Mr. Ross' attorney, Mr. Stravato, sent an e-mail to counsel for Tennessee Land and Lakes stating that the name and address of the buyer should be: "Athena of SC, LLC, 240 West Old Country Road, Hicksville, New York 11801."

131.    During that same time period, Mr. Stravato was continuing to represent Defendant Michael L. Ross and the other Judgment Debtors in the 2009 Federal RICO case, as well as in the Blount County Chancery Court case referenced herein.

132.    As a result of these exchanges, also in the afternoon on September 21, 2011, counsel for Tennessee Land and Lakes sent an e-mail to the attorney for First Bank stating "It looks like this deal is done. When do you want the money and transfer the documents (sic)." A true copy of this e-mail is hereto attached as **Exhibit 11**.

133.    On September 22, 2011, Mr. Ross e-mailed Mr. Macri's attorney a signed "Cooperation Agreement" between VPI Company, LLC, and Tennessee Land and Lakes, which included (as an exhibit) a fully executed and notarized "Assignment of Declarant Rights." This Assignment "unconditionally and irrevocably" transferred the Declarant's Rights for Rarity Enclave from VPI Company, LLC, to Tennessee Land and Lakes, LLC. Said Assignment is fully executed and dated September 22, 2011. A true copy of the fully executed Cooperation Agreement, with the Assignment of the Declarant Rights executed September 22, 2011, is hereto attached as **Exhibit 12**.

134.    In accordance with the intentions of the parties and in furtherance of the goals of the Illegal Rarity Conveyance Enterprise and Conspiracy, the e-mail referenced in paragraph 133

37

included a statement by Mr. Ross specifically instructing Mr. Macri's attorney to hold the Cooperation Agreement "in escrow until the agreement with TN Land Lakes, LLC and Athena have been completed." Mr. Ross then asked that he be sent "an executed copy of the Cooperation Agreement after TN Land and Lakes, LLC has signed," which occurred later that afternoon.

135.  Less than an hour after Mr. Ross had forwarded an executed copy of the Cooperation Agreement and the Assignment of Declarant Rights referenced above, both Ted Doukas and James Macri had signed the corresponding agreement between Athena of SC, LLC, and Tennessee Land and Lakes for the purchase of the SunTrust notes. Said fully executed Agreement was faxed to Mr. Macri and/or Mr. Shanks on September 22, 2011, at approximately 2:27 p.m. A true copy of the signed agreement is hereto attached as **Exhibit 13**.

136.  Shortly thereafter, Mr. Ross' attorney, John Stravato, wired $230,000 to Mr. Macri's attorneys' trust account. A true copy of the bank's "Incoming Wire Transmission Notification" is hereto attached as **Exhibit 14**.

137.  Subsequently, also on September 22, 2011, Tennessee Land and Lakes, LLC and SunTrust Bank executed an agreement allowing Tennessee Land and Lakes to acquire the referenced SunTrust notes for $1,560,000. Said agreement provided for a closing date the following month.

138.  Later on September 22, 2011, Defendant Macri wrote Defendant Mike Ross an e-mail stating that Greg Shanks (counsel for Mr. Macri and Tennessee Land and Lakes) needed the original Cooperation Agreement "from you and me." The original Agreement was thereafter forwarded to Greg Shanks. A true copy of the referenced e-mail and the fully signed Cooperation agreement is hereto attached as **Exhibit 15**.

38

139.     Also on September 23, 2011, at 2:34 p.m., Defendant Michael Ross sent an e-mail to VPI Company, LLC's bankruptcy counsel Lynn Tarpy, with a copy to Greg Shanks and with a subject line designated as "VPI Bankruptcy," stating:  "Lynn, it is now okay to dismiss or withdraw the VPI bankruptcy." A true copy of said e-mail is hereto attached as **Exhibit 16**.

140.     However, the pending bankruptcy action in the United States District Court for the Eastern District of Tennessee for VPI Company, LLC, was not dismissed until an order was entered on November 14, 2011. *See In re: VPI Company, LLC*, no. 3:10-bk-34099 [Doc. 76].

141.     At no time did VPI Company, LLC list the Declarant's Rights at Rarity Enclave, which were owned by VPI Company, LLC, as an asset in any of its disclosures or reports in the Chapter 11 bankruptcy proceeding which was ongoing at the time of the transactions referenced above.  When VPI filed its motion to dismiss on October 5, 2011, VPI simply stated: "the only asset of the estate was a development in Monroe County, Tennessee, for which the secured creditor has received relief from the stay and foreclosed. There was no equity." [Doc. 73].

142.     At no time did VPI Company, LLC, Defendant Michael Ross, Defendant Tennessee Land and Lakes, LLC, Defendant James Macri, Defendant Athena of SC, LLC, or Defendant Ted Doukas disclose the transactions in which they were involved (referenced above) to the United States Bankruptcy Court for the Eastern District of Tennessee.

143.     To the contrary, the parties to the multi-party agreement described above took affirmative steps to conceal from the United States Bankruptcy Court the fraudulent conveyance of the Declarant's Rights at Rarity Enclave to Tennessee Land and Lakes.

144.     Specifically, in addition to the failure to disclose the Declarant Rights at Rarity Enclave as an asset in the Bankruptcy action and the failure to disclose the conveyance of those

39

Declarant Rights on September 22, 2011, Defendant Michael Ross attempted to create the false impression that the Assignment of Declarant Rights for Rarity Enclave had not been executed until after the dismissal of the bankruptcy case by signing a second, duplicative assignment on October 28, 2011, the day after a hearing was held for the voluntary dismissal of the Chapter 11 bankruptcy action of VPI Company, LLC. Further, said duplicate Assignment of Declarant Rights was held and not recorded until November 17, 2011, three days after an Order was entered dismissing the VPI Company, LLC's Chapter 11 bankruptcy action. A true copy of the referenced duplicate Cooperation Agreement and Assignment of Declarant Rights, signed by Michael Ross on behalf of VPI Company, LLC, is hereto attached as **Exhibit 17**.

      **C.**    **The Next Steps in the Multi-Party Agreement: Closing on the Bank Notes and Entering Friendly Agreed Judgments Between Doukas and Ross Entities.**

145. As has been noted, at the very same time the multi-party agreement was being negotiated and executed between the referenced parties, the Judgment Debtors were being sanctioned for various discovery violations. In fact, within four days of the agreement's execution by Mr. Macri, Mr. Ross and Mr. Doukas and on behalf of their respective entities, Mr. Stravato personally appeared before Judge Guyton for a hearing on September 26, 2011, concerning Mr. Stooksbury's first motion for a default judgment.

146. In the days and weeks following the filing of Judge Guyton's opinion on September 28, 2011, recommending entry of a default judgment because of the Judgment Debtors' willful discovery abuse (Doc. 185 in the 2009 Federal RICO case), the Defendants referenced above continued to commit acts in furtherance of the Illegal Rarity Conveyance

40

Enterprise and Conspiracy and, in fact, expanded the scope of their scheme to involve other persons and entities in their fraudulent effort to render the Judgment Debtors judgment proof.

147. On October 14, 2011, Mr. Doukas changed the principal office address of Raposo Realty, LLC, from Mr. Ross' offices at 1010 William Blount Drive in Maryville, TN, to "19202 Cloister Lake Lane, Boca Raton, FL 33498"; the registered agent of the entity was also changed to be United Corporate Services, Inc., in Nashville.

148. In accordance with the multi-party agreement referenced above and the agreements executed between the parties to said agreement on September 22, 2011, Defendants Tennessee Land and Lakes and James Macri subsequently closed on the acquisition of the First Bank note encumbering Rarity Enclave.

149. The foreclosure previously scheduled by First Bank was then allowed to proceed, James Macri was the only bidder at the foreclosure, and Mr. Macri bought the property comprising the Rarity Enclave during the foreclosure for $500,000 on behalf of Tennessee Land and Lakes.

150. Thereafter, with the knowledge and consent of Mr. Ross and VPI Company, LLC, agents for Mr. Macri, Mr. Ross, Tennessee Land and Lakes, and VPI Company, LLC, prepared the paperwork to enable Tennessee Land and Lakes to be substituted for First Bank in the Knox County Chancery action referenced above in order to facilitate the entry of an agreed judgment between Tennessee Land and Lakes, LLC, against VPI and Mr. Ross.

151. On November 21, 2011, an Agreed Judgment was entered in favor of Tennessee Land and Lakes, LLC against VPI and Mr. Ross for $3,940,514.95, plus interest of $45,342.91. Mr. Ross agreed to this Judgment for the purpose of facilitating the fraudulent conveyances

41

described herein, as he understood that the resulting deficiency judgment was going to be assigned to his designee, Athena of SC, LLC, in accordance with the multi-party agreement previously executed between Mr. Ross, Mr. Macri, and Mr. Doukas. A true copy of this agreed judgment is hereto attached as **Exhibit 18**.

152.    Subsequently, in accordance with the understanding and terms of the parties to the referenced multi-party agreement and after Athena of SC, LLC, had paid Tennessee Land and Lakes, LLC, for the SunTrust notes encumbering Rarity Bay, the judgment referenced in paragraph 160 was assigned to Athena of SC, LLC, by Tennessee Land and Lakes, LLC, on November 28, 2011. A true copy of the assignment is hereto attached as **Exhibit 19**.

153.    Mr. Ross agreed to pay Mr. Macri's legal bill for the "Rarity Enclave" suit. See the e-mail exchange between Mr. Ross and Mr. Macri, hereto attached as **Exhibit 20**.

154.    On November 28, 2011, in accordance with the referenced multi-party agreement and in furtherance of the Illegal Rarity Conveyance Enterprise and Conspiracy, Athena of SC, LLC, Mr. Ross' attorney's designee, acquired the SunTrust notes referenced above from Tennessee Land and Lakes, LLC, by assignment. In doing so, Athena paid Tennessee Land and Lakes the same amount Tennessee Land and Lakes had paid SunTrust for those notes, other than several days' worth of interest during the period of time between Tennessee Land and Lakes' acquisition of the notes from SunTrust and Athena's acquisition of the notes from Tennessee Land and Lakes. A true copy of the fully executed Note Sale and Assignment Agreement is hereto attached as **Exhibit 21**; a true copy of documents and e-mails pertaining to the closing of this component of the deal is hereto attached as collective **Exhibit 22**.

42

155.    Funds to pay the balance due to Tennessee Land and Lakes, LLC, were apparently paid by two wire transfers – one evidently sent by Ted Doukas, through an entity of his called "Efastos Corp.," to "Orchard Investment, Inc.," an agent or member of Tennessee Land and Lakes, LLC, in the amount of $580,000, and another sent by Mr. Ross' attorney, Mr. Stravato, apparently to the same entity, in the amount of $701,195.48. Copies of wire transfer request forms reflecting these amounts are hereto attached as collective **Exhibit 23**.

156.    Based upon information and belief, a significant part, if not all, of the consideration given for the assignments of the SunTrust notes by Tennessee Land and Lakes to Mr. Ross' designee, Athena of SC, LLC, was either provided by and/or was secured by Mr. Ross and/or entities controlled by Mr. Ross. To the extent any consideration for Athena's acquisition of the SunTrust notes was provided directly or indirectly by an entity controlled by Mr. Doukas, such consideration was provided only because Mr. Ross and/or entities controlled by Mr. Ross had either advanced those funds or had secured those funds as part of the Illegal Rarity Conveyance Enterprise and Conspiracy described herein.

157.    Further, and regardless of the immediate or most direct source of some or all of the funds which were used to pay for Athena's acquisition of the SunTrust notes from Tennessee Land and Lakes, LLC, all of said funds were paid pursuant to the multi-party agreement referenced above, a key component of which was the agreement between Mr. Doukas and Mr. Ross that they would: (a) work together going forward to operate and profit from the Judgment Debtors' assets at Rarity Bay and elsewhere; and (b) transfer substantially all of the Judgment Debtors' assets at Rarity Bay and elsewhere to entities controlled by Mr. Doukas and/or other entities controlled by Mr. Ross in order to hinder, delay or defraud Mr. Stooksbury.

43

158. Mr. Doukas' and Mr. Ross' agreement as referenced in paragraph 164 is reflected in said parties' (and their entities') course of dealing and communications after Tennessee Land and Lakes, LLC, transferred the SunTrust notes to Athena of SC, LLC, in exchange for the Declarant's Rights at Rarity Enclave.

159. In late November of 2011, just after Athena paid Tennessee Land and Lakes for the SunTrust notes, in accordance with the multi-party agreement referenced above, and in furtherance of the Illegal Rarity Conveyance Enterprise and Conspiracy overall, agents for Tennessee Land and Lakes, James Macri, Tellico Lake Properties, L.P., LTR Properties, Inc., Michael Ross, and Athena of SC, LLC, and Ted Doukas prepared the paperwork to allow friendly agreed judgments to be entered between Athena, Tellico Lake Properties, LP, LTR Properties, Inc., and Michael L. Ross.

160. Accordingly, just after the date of the assignment of the SunTrust – LTR note by Tennessee Land and Lakes, LLC, to Athena of SC, LLC, an agreed judgment was entered in Knox County Circuit Court on November 30, 2011, in favor of Athena of SC, LLC, against LTR Properties, Inc. and Michael L. Ross, based upon a "Complaint On Promissory Note And Guaranties" filed the same day, in a case styled as <u>Athena of SC, LLC, Plaintiff v. LTR Properties, Inc. and Michael L. Ross, Defendants</u>, Knox County Circuit Court No. 3-623-11; the amount of the judgment for the alleged deficiency on the note was $1,100,604.82, plus interest and attorneys' fees. A true copy of the Complaint and Agreed Judgment is hereto attached as collective **Exhibit 24**.

161. Similarly, on November 30, 2011, Athena of SC, LLC, entered into a second Agreed Judgment with Mr. Ross – this one in favor of Athena against Tellico Lake Properties,

44

L.P. and Mr. Ross, based on a Complaint filed the same day in Knox County Circuit Court as docket number 1-624-11. The amount of the Agreed Judgment was $6,627,157.31, plus interest and attorneys' fees. A true copy of the Complaint and Agreed Judgment is hereto attached as collective **Exhibit 25**.

162.    Accordingly, in exchange for transferring the Declarant Rights at Rarity Enclave to Tennessee Land and Lakes, LLC, outside of the bankruptcy proceeding and payment of approximately $1,560,000, Mr. Ross, through his designee Athena of SC, LLC, and its owner, Ted Doukas, secured the entry and assignment of friendly agreed judgments against Mr. Ross and three of his entities – LTR Properties, Inc., Tellico Lake Properties, LP, and VPI Company, LLC (as well as himself), with a total combined face amount of approximately eleven million dollars, more than seven times the consideration paid for the notes by multiple wire transfers from Mr. Ross' attorney's trust account and Mr. Doukas' entity, Efastos Corp.

163.    Additionally, it is noteworthy that prior to the multi-party agreement being consummated on September 22, 2011, in which the Declarant's Rights at Rarity Enclave were exchanged for the bank notes and agreed judgments to enable and facilitate the various fraudulent conveyances and agreements that were executed by the Defendants during the months that followed, the parties to the multi-party agreement, themselves or through agents of theirs, had been previously advised by VPI Company, LLC's bankruptcy counsel on September 16, 2011, that the United States Bankruptcy Court's permission would have to be sought and obtained prior to such a deal being done. *See* the e-mail exchanges on September 16, 2011, between counsel for VPI Company, LLC (through its Chief Manager Michael Ross), and counsel

45

for James Macri and Tennessee Land and Lakes, LLC, a true copy of which is hereto attached as collective **Exhibit 26**.

164. Indeed, as referenced above, the parties not only went forward with the deal on September 22, 2011, without obtaining permission from the Court, the parties endeavored to conceal their transaction until after the pending bankruptcy proceedings had been dismissed.

165. Plaintiff specifically states that the parties' consummation of the multi-party agreement without the consent of the United States Bankruptcy Court and without disclosure to the Court was intentional and violated 18 U.S.C. § 152, as well as 18 U.S.C. §§ 1341 and 1343.

166. Accordingly, each individual communication and act committed during the course of the multi-party agreement, including but not limited to those specifically referenced herein, constitutes a separate predicate act in violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§1961, *et seq.*

167. Further, because the multi-party agreement formed the foundation which enabled and facilitated the subsequent fraudulent conveyances and agreements by the Defendants which were made as part of the Illegal Rarity Conveyance Enterprise and Conspiracy between September of 2011 and the present, many of which are specifically outlined below, all of said Defendants' transactions and agreements are inextricably interrelated and flow from the execution of the fraudulent multi-party agreement. In this manner, each fraudulent conveyance and agreement executed by Defendants during and after the execution of the multi-party agreement constitutes a violation of 18 U.S.C. §§ 152, 1341, and 1343, as well as 18 U.S.C. §§ 1962(c) and (d).

46

**D. Fraudulent Conveyances Using As Pretexts the Agreed Judgments Arising Out of the Multi-Party Agreement**

**1. Fraudulent Conveyances by Rarity Management Company, LLC**

168.    After the Declarant's Rights for Rarity Enclave had been exchanged for the discounted SunTrust Notes and the various judgments referenced above in the weeks that followed the filing of Judge Guyton's Report and Recommendation on September 28, 2011, recommending to the District Court that a default judgment be entered against the Judgment Debtors for willful discovery abuse (Doc. 185), Defendants Micheal Ross, Ted Doukas, Rebecca Jordan, Patricia Ross, Evelyn Ross, Giselle Doukas, and other Defendants herein proceeded to engage in fraudulent conduct, to execute fraudulent agreements, and to attempt to use the entry of the agreed judgments referenced above as a pretext for executing a series of fraudulent conveyances and transfers over the next several months in an effort to hinder, delay and defraud Mr. Stooksbury.

169.    All of the conduct generally referenced in paragraph 168 above by the Defendants was committed in accordance with the goals and intentions of the parties to the referenced multi-party agreement, and in furtherance of the Illegal Rarity Conveyance Enterprise and Conspiracy,

170.    For example, in what was a thinly veiled effort to use the Courts and the fraudulent agreed judgments as an artifice, Defendants Michael Ross, Rebecca Jordan, and Ted Doukas, through entities controlled by them, transferred numerous parcels of property at Rarity Bay worth millions of dollars, including the Rarity Bay golf course, the Rarity Bay club, the Rarity Bay club house, the Rarity Bay boat docks, and numerous other lots and parcels, to entities controlled by Ted Doukas and/or Michael Ross.

47

171.     When the fraudulent agreed judgments were entered and/or assigned to Athena of SC, LLC, on November 28, 2011, as part of the multi-party agreement, Rarity Management Company, LLC, an entity 100% owned by Judgment Debtor Rebecca Jordan, owned the Rarity Bay golf course, the Rarity Bay club house, the Rarity Bay boat docks, numerous other lots and parcels at Rarity Bay, and several properties outside of Rarity Bay.

172.     Because the fraudulent agreed judgments obtained as a result of the multi-party agreement were entered against entities other than Rarity Management Company, LLC -- Tellico Lake Properties, LP, LTR Properties, VPI Company, LLC, and Michael Ross individually – some of the next steps in the Illegal Rarity Conveyance Enterprise and Conspiracy involved transferring the property referenced in paragraph 171 from Rarity Management Company, LLC, to entities that were defendants in the fraudulent agreed judgments, including Tellico Lake Properties, LP, and Michael Ross.

173.     Accordingly, on or about December 19, 2011, approximately three weeks after the entry of the agreed judgments referenced above, Rarity Management Company, LLC, fraudulently conveyed the following property to Tellico Lake Properties, LP, for no consideration:

a.       The Rarity Bay golf course, the Rarity Bay club house, and the Rarity Bay boat docks – true copies of the deeds used to make these fraudulent conveyances are hereto attached as collective **Exhibit 27**;

b.       Numerous other lots and parcels at Rarity Bay -- true copies of the deeds used to make these fraudulent conveyances are hereto attached as collective **Exhibit 28**; and

48

c.      Certain other parcels owned by Rarity Management Company, LLC – true copies of the deeds used to make these fraudulent conveyances are hereto attached as collective **Exhibit 29**.

174.    At or near the same time, for the same fraudulent purposes in connection with the fraudulent agreed judgments, and as part of the Illegal Rarity Conveyance Enterprise and Conspiracy, Rarity Management Company, LLC, transferred numerous parcels of property to Michael Ross for no consideration; true copies of the deeds used to make these fraudulent conveyances are hereto attached as collective **Exhibit 30**.

175.    Additionally, at or near the same time, as part of the Illegal Rarity Conveyance Enterprise and Conspiracy, and for the purpose of hindering, delaying or defrauding Mr. Stooksbury, Rarity Management Company, LLC, fraudulently conveyed numerous parcels to M&D Ross Rentals without consideration, for the use and personal benefit of Michael Ross, Evelyn Ross, and Patricia Ross and with said Defendants' knowledge and consent; true copies of the deeds used to make these fraudulent conveyances are hereto attached as collective **Exhibit 31**.

176.    Additionally, at or near the same time, as part of the Illegal Rarity Conveyance Enterprise and Conspiracy, and for the purpose of hindering, delaying or defrauding Mr. Stooksbury, Rarity Management Company, LLC, fraudulently conveyed property to Likos of Tennessee, Inc., an entity controlled by Defendants Giselle Doukas and Ted Doukas, without legitimate or sufficient consideration, for the use and personal benefit of said Defendants, and with said Defendants' knowledge and consent.  True copies of the deeds used to make these fraudulent conveyances are hereto attached as collective **Exhibit 32**.

49

## 2. Fraudulent Conveyances by other Defendants

177. In addition to the property transfers by Rarity Management Company, LLC, referenced above, following the execution of the multi-party agreement, and the recommendation by Judge Guyton of a default judgment against the Judgment Debtors, other Defendants herein fraudulently conveyed, transferred, or encumbered property during this same general time period, including but not limited to Defendants HPD Properties, LLC, Michael Ross, Evelyn Ross, and other Defendants as noted below.

178. Mr. Stooksbury states that the purpose of the transactions generally referenced in paragraph 177 was to hinder, delay, or defraud Mr. Stooksbury as part of the Illegal Rarity Conveyance Enterprise and Conspiracy, either by: (a) conveying such property and assets into the names of associations or entities other the Judgment Debtors in the 2009 Federal RICO case; or (b) conveying such property and assets to Michael Ross and/or the entities named as defendants in the fraudulent agreed judgments entered in late November of 2011, such that the property and assets could then be transferred to or encumbered by a Doukas entity for the mutual personal benefit of Defendants Ted Doukas, Giselle Doukas, Michael Ross, Evelyn Ross, Patricia Ross and Rebecca Jordan (and entities controlled by them).

179. One example of this type of transaction is the set of conveyances by Defendant HDP Properties, LLC, an entity controlled at all relevant times by Michael Ross, which are reflected in the deeds hereto attached as collective **Exhibit 33**.

180. Mr. Stooksbury affirmatively states that HDP Properties, LLC, a Wyoming entity set up by Mr. Ross to control and shield certain properties in Tennessee, was a sham entity that

50

was the instrumentality and alter ego of Mr. Ross, such that its business structure should be disregarded.

181.    As these deeds reflect, Mr. Ross had previously conveyed properties into HDP Properties, Inc., and then once the multi-party agreement was signed, the referenced recommendation of a default judgment had been made, and the various related conduct was occurring as part of the Illegal Rarity Conveyance Enterprise and Conspiracy, Mr. Ross fraudulently conveyed the properties referenced in paragraph 179 for no consideration and for the purpose of hindering, delaying or defrauding Mr. Stooksbury.

### 3. The Fraudulent Forbearance Agreement Between Mike Ross and Ted Doukas

182.    On December 15, 2011, shortly after the exchange of fraudulent consideration as part of the multi-party agreement, the entry of the fraudulent agreed judgments, and many of the other events referenced above and in furtherance of the same enterprise and conspiracy, Defendant Michael Ross and Ted Doukas, through Athena of SC, LLC, entered into a "Forbearance Agreement," purportedly based on the friendly agreed judgments referenced above. A true copy of said Forbearance Agreement is hereto attached as **Exhibit 34**.

183.    Based expressly on the three fraudulent agreed judgments improperly obtained in late November of 2011 as part of the multi-party agreement, the language of the Forbearance Agreement purports to grant Athena a security interest in certain named entities, including Tellico Lake Properties, LP, and LTR Properties, Inc., and also purports to assign to Athena of SC, LLC distributions of income, profits, dividends and other payments due to Michael Ross from Rarity Management Company, LLC.  (At that time, as well as all relevant times, Rarity Management Company, LLC, was owned entirely by Defendant Rebecca Ross Jordan).

51

184.     Additionally, based on those same fraudulent agreed judgments as they relate to Michael Ross individually, the same Forbearance Agreement purports to grant Athena of SC, LLC, security interests in the property and all assets of numerous entities based on Michael Ross' ownership interest in them (in addition to the entities subject to the fraudulent agreed judgments, referenced in paragraph 183):   OR Properties, LLC, RM Company, Inc., RRT Properties, LLC, Tellico Communities, Inc., WFD Company, Inc., RCCA Company, Inc., PM Properties of Tennessee, L.P., PM Properties of Tennessee, LLC, PM Properties #2 of Tennessee, L.P., PM Properties #2 of Tennessee, LLC, PM Properties #3 of Tennessee, L.P., and PM Properties #3 of Tennessee, LLC.   Plaintiff specifically alleges that the grant of these security interests purportedly pursuant to the friendly agreed judgments referenced above were fraudulent, lacked any legitimate consideration, and were intended to hinder, delay and defraud Mr. Stooksbury with regard to Mr. Stooksbury's claims in the 2009 Federal RICO case.

185.     Mr. Ross and Mr. Doukas, through Athena, entered into the Forbearance Agreement and with the assistance of James Macri and Tennessee Land and Lakes, LLC, through their counsel, in furtherance of the multi-party agreement, as part of the ongoing relationship between Mr. Ross, Mr. Doukas, Mr. Macri and entities controlled by them which continued for several months after the multi-party agreement was executed (well beyond the date of Judgment in the 2009 Federal RICO case), and in furtherance of the Illegal Rarity Conveyance Enterprise and Conspiracy.   *See, e.g.,* the e-mails exchanged between these parties and their agents concerning, in part, the Forbearance Agreement and the interplay between that agreement and the involuntary bankruptcy filed against Michael Ross by a third party in late December of

52

2011, as well as other issues, which reflect the parties' ongoing relationship during that time period; these e-mails are hereto attached as collective **Exhibit 35**.

186. As has been stated previously, an important component of the multi-party agreement referenced above, as well as a central component of the Illegal Rarity Conveyance Enterprise and Conspiracy overall, was the agreement between Mr. Ross and Mr. Doukas, their agents, their various entities, and their relatives that they would work together going forward as an association, joint venture and/or joint enterprise to operate and profit from assets at Rarity Bay, as well as other assets, by conveying substantially all of the assets controlled by the Judgment Debtors to entities controlled by Mr. Doukas and/or Ted Doukas' wife, Giselle Teixeira (also known as Giselle Doukas), and/or other Defendants while allowing all of them to benefit either directly or indirectly from operations of the assets.

187. Accordingly, despite the appearance said Defendants attempted to create by executing the various judgments and agreements during the subject time period, including the Forbearance Agreement, Mr. Ross in fact retained the ability to control and manipulate the various entities and assets referenced in the Forbearance Agreement after the Agreement's execution, as has been reflected by the conduct and dealings of the parties since the Agreement was executed.

188. For example, in an e-mail exchange between Mr. Ross and Jim Macri on December 20, 2011 – five days *after* the Forbearance Agreement was signed between Mr. Ross and Mr. Doukas / Athena, Mr. Ross wrote Mr. Macri and said: "Jim, I'm thinking about starting collection efforts on the attached notes, your thoughts, Mike." The notes attached were promissory notes made payable to LTR Properties, Inc. – one of the entities specifically

53

referenced in the December 15, 2011, Forbearance Agreement. LTR Properties, Inc. is also one of the parties to the friendly agreed judgments referenced above. A true copy of this e-mail and the attachment it references is hereto attached as collective **Exhibit 36**.

> ### 4. The Fraudulent Conveyances of the Rarity Bay Golf Course, Club House, and Boat Docks to American Harper Corporation

189. Following the execution of the Forbearance Agreement and the transfers of the Rarity Bay golf course, the Rarity Bay club house, the Rarity Bay boat docks, and numerous other lots and parcels at Rarity Bay and elsewhere by Rarity Management Company, LLC, to Tellico Lake Properties, LP, and others in December of 2011, as referenced above, Defendants Michael Ross, Ted Doukas, and James Macri, themselves and through their agents, spent several weeks attempting to determine the best scheme to transfer all of the referenced Rarity Bay property to an entity ostensibly controlled by Ted Doukas and then executing various documents in an effort to get that accomplished.

190. As the Defendants' course of dealing reflects, these transfers were an integral part of the Illegal Rarity Conveyance Enterprise and Conspiracy, as it was the intention of the individual Defendants and their related entities from the outset for the Rarity Bay golf course, the Rarity Bay club house, the Rarity Bay boat docks, the Rarity Bay club, and numerous Rarity Bay lots and parcels to be transferred, assigned or encumbered fraudulently by entities ostensibly controlled by Ted Doukas for the mutual benefit of Ted Doukas, Giselle Doukas, Michael Ross, Evelyn Ross, Patricia Ross and Rebecca Ross (as well as entities controlled by them).

191. On January 2, 2012, a draft deed for the golf course was circulated by counsel for James Macri and Tennessee Land and Lakes, LLC, to: Ted Doukas, Mr. Doukas' counsel Gary Goldstein, Michael Ross, and Mr. Ross' counsel. The e-mail is entitled "Golf Course Deed to

American Harper Corp." and states that it "is not a quit-claim deed because I felt it was essential that consideration be transferred between the parties." The e-mail then references how the consideration "will be very closely scrutinized by the Department of Revenue" and discusses approximately how much in property taxes will be due when the deeds are recorded. Reference is also made to 2010 property taxes being delinquent and counsel's assumption that the overdue taxes would be paid when the transfer was made. A true copy of the referenced e-mail is hereto attached as **Exhibit 37**.

192. On January 4, 5 and 8, 2012, several e-mails were exchanged between counsel for Mr. Macri, Michael Ross, and Ted Doukas regarding what entity would operate the golf course after the transfer of the property from Tellico Lake Properties, LP, to American Harper Corporation. Mr. Ross wrote that he had "talked to Ted" and that "rather than doing a lease, he wants American Harper assuming the membership rights and obligations from Tellico Lake Properties and Rarity Management Company" and then states: "I assume we will need an agreement to accomplish this, please advise." Mr. Shanks then asks: "Is American Harper going to just hire Rarity to run the golf course?" Mr. Ross then responds, "I think it probably makes sense for American Harper to become the operator, but I'm open for your thoughts." Mr. Doukas then writes: "I think this is the best way." On January 8, 2012, Mr. Ross wrote Mr. Shanks, with a copy to Mr. Doukas, stating that "the golf course deed needs to wait on the assumption of the membership plan agreement." True copies of these e-mails are hereto attached as collective **Exhibit 38**.

193. Subsequently, as is reflected in e-mail exchanges between Mr. Shanks, Mr. Ross, and Mr. Doukas dated January 28, 2012, and January 31, 2012, Mr. Shanks forwarded draft deeds

for the conveyance of the Rarity Bay golf course to Mr. Ross and Mr. Doukas on January 28, 2012, but subsequently asked them not to use the deeds he had prepared because of the entry of the default judgment against the Judgment Debtors on January 30, 2012: "Since the Stooksbury judgment has been recorded, I think that enormously complicates Ted buying the golf course and the transaction needs to be re-thought. While I cannot tell you want to do, I do not wish for you to use the deed I prepared given the new set of circumstances. I have also told Ted and am copying him with this e-mail." True copies of these e-mails are hereto attached as collective **Exhibit 39**.

194.    On March 20, 2012, after the jury trial and the entry of judgment against Judgment Debtors (including Tellico Lake Properties, LP, and Michael Ross), Tellico Lake Properties, LP, through Michael Ross, recorded "Quitclaim Deeds" transferring the Rarity Bay golf course, the Rarity Bay club house, and the Rarity Bay boat docks to American Harper Corporation, an entity owned by Ted Doukas that is a related entity to Athena of SC, LLC, another Doukas entity. The deeds state that they were "prepared by: Tellico Lake Properties, LP," and state that the consideration exchanged for the conveyances was "-0-." True copies of those deeds are hereto attached as collective **Exhibit 40**.

195.    The deeds referenced in paragraph 201 conveyed 47 tracts of real property comprising approximately 251.411 acres with property tax values of $11,123,100 and are the same or substantially the same as the deeds conveyed by Rarity Management Company, LLC, to Tellico Lake Properties, LP, on December 19, 2011, for no consideration, which are referenced in paragraph 180. These tracts include the entire Rarity Bay golf course and clubhouse, three tracts of real property, the boat docks, and several residential lots. At the time of this

56

conveyance, these tracts were subject to the Plaintiff's state court lien *lis pendens*, as well as the recorded Judgment Liens of this Court based on the judgments entered in the 2009 Federal RICO Case.

196.     The conveyances referenced in paragraphs 201 and 202 themselves constitute fraudulent conveyances because they were made in an effort to hinder, delay and defraud Mr. Stooksbury and Mr. Stooksbury's claims in the 2009 Federal RICO case, and also were made as part of the scheme that was the subject of the multi-party agreement referenced above, as well as the Illegal Rarity Conveyance Enterprise and Conspiracy.

### 5.     The Fraudulent Conveyance of Assets of Tellico Lake Properties, LP Pursuant to the March 20, 2012, "Agreement"

197.     Also on March 20, 2012, an agreement was signed between Michael Ross and Ted Doukas, purporting to transfer "all of the real and personal property" of Tellico Lake Properties, LP, to American Harper Corporation, "a Nevada Corporation." The agreement: specifically references the agreed judgment entered November 28, 2011, against Tellico Lake Properties, LP, in favor of Athena of SC, LLC; states that American Harper will "assume the existing obligation and liability of Tellico Lake Properties to the Rarity Bay Country Club Membership; and attaches a list of office equipment, computers, and other property which purports to be transferred. A true copy of this purported agreement is hereto attached as **Exhibit 41**.

### 6.     The Fraudulent Conveyance of Rarity Bay Declarant's Rights and the Depletion of Cashflow and Waste of Assets by American Harper Corporation

198.     On March 27, 2012, Rarity Management Company, LLC, amended the Declarant's rights at Rarity Bay to transfer those rights to Tellico Lake Properties, LP. The

57

agreement is signed on behalf of Rarity Management Company, LLC, by Rebecca Ross Jordan and on behalf of Tellico Lake Properties, LP, by Michael Ross. A true copy of the agreement is hereto attached as **Exhibit 42**.

199.    On March 30, 2012, an e-mail was sent out to the Rarity Bay Property Owners which advised the property owners that while the Club assets had been transferred to a new ownership entity, "Mr. Ross is expected to remain in a consulting capacity." A true copy of this e-mail is hereto attached as **Exhibit 43**.

200.    On April 1, 2012, in furtherance of the Illegal Rarity Conveyance Enterprise and Conspiracy, American Harper Corporation nominally became the operator of Rarity Bay. However, all of the employees who formerly worked at Rarity Bay for the various Ross entities, including Rebecca Ross Jordan and others, continued to work in the same offices, doing essentially the same jobs for the same pay.

201.    During the calendar year 2012, Plaintiff alleges that Mr. Ross and Mr. Doukas improperly took significant amounts of money out of cash flow from various aspects of Rarity Bay operations, including but not limited to the operations of the Rarity Bay golf course, club, property owners' association, and boat slips.

202.    Because of the cash flow generated by the lessees' payments for use of the boat slips, there was more than a sufficient amount of funds available each month to pay for all of the expenses for the boat slips, including but not limited to a promissory note that had been taken out on the property with United Community Bank.

203.    However, instead of attempting to obtain permission from United Community Bank for the purported transfer of the boat slips and then maintaining the payments due on the

58

bank note, Mr. Ross and/or Mr. Doukas used a significant amount of the cash flow for other purposes and allowed the property to go into default. Thereafter, United Community Bank initiated foreclosure proceedings.

204. Plaintiff specifically contends that Mr. Doukas and Mr. Ross, through their respective entities, have allowed and are continuing to allow assets at Rarity Bay and elsewhere to be wasted, including but not limited to the Rarity Bay Golf Course, the Rarity Bay boat slips, and the Rarity Bay Club. Plaintiff affirmatively states that said Defendants are engaging in this conduct because they know that their conduct is fraudulent, they expect the conveyances referenced herein to be set aside by the Court at some point in time, and they want to take and convert all of the cash and resources they can before that occurs.

205. Further, Plaintiff specifically states that the referenced conduct on the part of Mr. Doukas and Mr. Ross, through their agents and business entities, has unjustly enriched some of the other Defendants herein, including Mr. Doukas' and Mr. Ross' relatives, including but not limited to Giselle Doukas, Evelyn Ross and Rebecca Ross Jordan.

206. Plaintiff states that the conveyances and agreements referenced as Exhibits 40, 41, and 42 above are fraudulent conveyances because they were made in an effort to hinder, delay and defraud Mr. Stooksbury and Mr. Stooksbury's claims in the 2009 Federal RICO case and because they were made in furtherance of the Illegal Rarity Conveyance Enterprise and Conspiracy.

### 7. Fraudulent Conveyances of Assets of LTR Properties, Inc., to Ted Doukas / Athena of SC, LLC

207. Based on the multi-party agreement and the fraudulent agreed judgments referenced above, Defendants Ted Doukas and Mike Ross have conspired to allow Athena of SC,

59

LLC, to obtain nominal control of LTR Properties, Inc., and its assets through the execution of a series of agreements as a means for attempting to put the assets of LTR Properties, Inc., beyond the reach of execution by Mr. Stooksbury and, at the same time, to enable Mr. Doukas and Mr. Ross to have the use and benefit of those assets.

208. As previously noted, on or about December 15, 2011, Athena of SC, LLC, purported to obtain a security interest in all of the assets and property of LTR Properties, Inc.

209. On February 24, 2012, Athena of SC, LLC, filed an execution in Knox County Circuit Court, docket number 3-623-11. The execution requested a levy against a note from RPM Assets, LLC to LTR Properties, Inc.; a 2006 Ford truck; and, numerous items of golf course maintenance equipment. The execution paperwork was forwarded by the Court Clerk to Blount County on the day the jury returned its verdict for punitive damages, March 1, 2012.

210. Also on March 1, 2012, Mr. Ross and Mr. Doukas executed a "Pledge Of Stock Of LTR Properties, Inc. and Option To Retain Stock between Michael Ross and Athena of S.C., LLC."

211. On March 5, 2011, in a Chapter 11 bankruptcy proceeding initiated by Mr. Ross without the requisite authority on behalf of Tellico Landing, LLC (in United States Bankruptcy Court for the Eastern District of Tennessee as case number 3:11-bk-33018), Mr. Ross signed a Disclosure Statement, purportedly on behalf of the debtor, Tellico Landing, LLC, asserting:

> LTR Properties, Inc., has had its assets executed upon through judicial process by Athena of SC, LLC ("Athena"). Ted Doukas is the principal of Athena. Mr. Doukas is an experienced developer and investor based in both Florida and New York. He will form a new company, NEWCO, that will use LTR's former assets for the benefit of the property owners, creditors, and the debtor. He is committed to both the current lot owners and future owners at Rarity Pointe that all amenities will be made available on a timely basis and be of a quality consistent with the Rarity Pointe development. NEWCO will assume the existing contractual

60

obligations of LTR under the Rarity Pointe Club Membership Plan. To the extent requested, and if requested, by NEWCO, Mike Ross has agreed to be available to it for consulting on an as needed basis. NEWCO shall continue the successful management of the Rarity Pointe Community Association, Inc., and will use the proven experience and professional sales track record of the Rarity Sales and Marketing team which was directly responsible for Rarity Pointe's early sales successes.

212.    The bankruptcy action referenced above was subsequently dismissed by the Court on Mr. Stooksbury's motion based on Mr. Ross not having had the requisite authority to commence the action.

213.    On March 21, 2012, an Allonge And Assignment Of Notes, an Assignment of Mortgage, and an Assignment of Membership Interest were executed between LTR Properties, Inc. and Athena of SC, LLC; each of these agreements constitutes a fraudulent conveyance.

214.    On April 20, 2012, without an appropriate basis or authority to do so, Athena of SC, LLC, purportedly "as assignee of LTR Properties, Inc.," filed suit against RPM Assets, LLC, and Mitchell Jones, in Knox County Chancery Court, no. 182631-2.

215.    On May 1, 2012, the Execution issued on March 1, 2012, was returned by the Blount County Sheriff to the Clerk. The document contains the following information:

> **OFFICER'S RETURN** (other than wage garnishment); executed as follows: (OR) executed by LEVYING on the following described property [then handwritten] "Promissory Note – RPM Assets – LTR Properties." On this 8 day of March, 2012. [Signature Captain Randall Merks] with the handwritten notation: "May 1, 2012 - Return to court per plaintiff's attorney - levied property returned to defendant (see receipt) 5/1/2012 [Signature of Captain Randall Merks] - Promissory Note was only item found in Blount County."

216.    True copies of the documents referenced in paragraphs 217, 220, 221 and 222 are hereto attached as collective **Exhibit 44**.

61

217.     On May 11, 2012, Athena of SC, LLC, initiated foreclosure proceedings on eleven (11) Rarity Bay condominiums owned by LTR Properties, Inc.  This foreclosure was subsequently enjoined by the United States District Court pending the completion of the Receiver's investigation as part of the post-judgment proceedings in the 2009 Federal RICO case.

218.     Despite the assignments, agreements, executions, and other steps taken by Mr. Doukas, through his entities, LTR Properties has at all times remained in the *de facto* control of Mr. Ross.

219.     This is evident from an e-mail exchange between Mr. Ross, Gary Goldstein (Mr. Doukas' lawyer), and Lynn Tarpy on March 30, 2012, in which Mr. Ross writes: "Lynn/ Garry (sic), there might be an opportunity to do a deal between Athena and WindRiver **with LTR cooperation by me** and leave Stooksbury out flapping in the wind.  Let's discuss." (emphasis added).  A true copy of that e-mail is hereto attached as **Exhibit 45**.

220.     Mr. Stooksbury affirmatively states that the agreements, encumbrances, and conveyances referenced in paragraphs 207 through 217 above are all improperly based on the fraudulent multi-party agreement and the fraudulent agreed judgments referenced herein. Accordingly, all such conveyances are fraudulent and constitute additional overt acts as a part of the Illegal Rarity Conveyance Enterprise and Conspiracy.

### E.     Other Related Improper Conduct in the Illegal Rarity Conveyance Enterprise and Conspiracy

221.     Also in furtherance of the Illegal Rarity Conveyance Enterprise and Conspiracy, during relevant times, Mr. Ross, with the consent of Defendant Rebecca Ross Jordan, operated and controlled an entity called LTR Marina, LLC, in a manner allowing Mr. Ross to receive cash

and profits from its operations. Plaintiff specifically states that Mr. Ross was at all times the owner in fact of LTR Marina, LLC, and that Mr. Ross had simply formed said entity and named Ms. Jordan as its Chief Manager and/or Managing Member as a pretext; at no time did Ms. Jordan give any consideration for any ownership interest in LTR Marina, LLC.

222.   Plaintiff affirmatively states that LTR Marina, LLC, was a sham entity that was used, at all relevant times, as the instrumentality of Mr. Ross and that accordingly, said business entity should be disregarded and all cash flow and assets of said entity should be deemed to be the property of Mr. Ross, such that all such funds and assets should be identified and used to satisfy the Judgment in the 2009 Federal RICO case.

223.   Another set of transactions and communications in the Illegal Rarity Conveyance Enterprise and Conspiracy involving Mr. Ross, Mr. Doukas and/or Mrs. Doukas, through entities controlled by them, was the purported conveyance of certain apartments and other assets to entities controlled by Mr. Doukas during the relevant time period.

224.   These assets include, but are not limited to, some apartments previously owned by Vonore Properties, LLC.   On May 10, 2011, Vonore Properties, LLC, had quitclaimed apartments to Rarity Management Company, LLC, for no consideration.  Then, on December 29, 2011, Defendants Michael Ross and Rebecca Jordan caused or allowed those same apartments to be conveyed to Likos of Tennessee, Inc., the entity set up the previous month by Defendants Ted Doukas and Giselle Doukas.

225.   Mr. Doukas and Mrs. Doukas formed Likos of Tennessee, Inc. in November of 2011 as a conduit for the acquisition of property pursuant to the Illegal Rarity Conveyance Enterprise and Conspiracy.  Plaintiff specifically states that these conveyances were fraudulent,

63

lacked legitimate or sufficient consideration, were part of the Illegal Rarity Conveyance Enterprise and Conspiracy, and were made for the purpose of preventing Mr. Stooksbury from collecting on his claims in the 2009 Federal RICO case. True copies of some of the e-mails and deeds exchanged by the Defendants involved in the multi-party agreement and their agents pertaining to this transaction are hereto attached as collective **Exhibit 46**.

226.    These e-mails reflect that counsel for Tennessee Land and Lakes, LLC, prepared the deed for the conveyance and that concern was expressed to Ted Doukas regarding the lack of adequate consideration for the transfer.

227.    Additionally, Plaintiff affirmatively states that Likos of Tennessee, Inc. is and has been, at all relevant times, a sham entity that has been the instrumentality of Ted Doukas and Giselle Doukas. Accordingly, the corporate formalities should be disregarded and all acts and omissions on the part of Likos of Tennessee, Inc., should be deemed the acts and omissions of Ted Doukas and Giselle Doukas.

228.    Further, Giselle Doukas' service as a nominal owner of Likos of Tennessee, Inc., constitutes conduct committed in furtherance of the Illegal Rarity Conveyance Enterprise and Conspiracy, rendering her separately and independently liable to the Plaintiff based on the causes of action stated below.

229.    At all relevant times, Raposo Realty, LLC, was acting in concert with Defendants Michael Ross and Ted Doukas in furtherance of the Illegal Rarity Conveyance Enterprise and Conspiracy.

230.    Plaintiff specifically asserts that the conduct of Defendants Michael Ross and Ted Doukas with regard to the lots owned in the name of the Doukas entity Raposo Realty, LLC, as

has been referenced in paragraphs above, was part of the Illegal Rarity Conveyance Enterprise and Conspiracy.

231. Specifically, based upon information and belief, the only funds actually paid by Raposo Realty, LLC, for the subject lots was one year's worth of interest, paid in advance and no further payment has been made on the bank note by Mr. Doukas, Mr. Ross, or any entity controlled by either of them, including Raposo Realty, LLC. Further, it appears that said parties do not intend to make any payments on those notes and have no intention of honoring their guarantees.

232. Further, Mr. Stooksbury affirmatively pleads that Raposo Realty, LLC, was at all relevant times a sham entity that was grossly undercapitalized and was used as the instrumentality of Mr. Doukas in furtherance of the Illegal Rarity Conveyance Enterprise and Conspiracy. Despite Mr. Doukas and/or Mr. Ross having sufficient funds available to them to pay the bank note on these lots, as evidenced by the purchases of other bank notes as referenced in this Complaint, said parties have defaulted on the notes, have failed to pay homeowners' association dues, and yet have maintained ownership of the property in bad faith. Essentially, said parties have attempted to use the formation of this business entity and the implicit threat of the costs of holding them accountable in the court system as a means of avoiding payment while continuing to maintain title to the property. Accordingly, such entity should be disregarded and all conduct and liabilities of Raposo Realty, LLC should be found to be the conduct and resulting liabilities of Ted Doukas and/or Michael Ross individually.

233. At all relevant times, another Ted Doukas entity, Breton Equity Company Corp., was acting in concert with Defendants Michael Ross and Ted Doukas in furtherance of the Illegal Rarity Conveyance Enterprise and Conspiracy.

234. Plaintiff specifically asserts that in December of 2011, after Defendants Michael Ross, Ted Doukas, and James Macri had entered into the multi-party agreement referenced in paragraphs 85 through 86 above and after Defendants Michael Ross and Ted Doukas, as part of that scheme, entered into the friendly judgments referenced in paragraphs above in November of 2011, Defendants Michael Ross and Tellico Lake Properties, LP, entered into an agreed judgment with First American Title Insurance Company in Blount County Chancery Court action no. 2010-113 with no intention of paying said judgment.

235. Instead, it was Mr. Ross' intention (and the intention of Tellico Lake Properties, LP) to enter into said agreed judgment for the purpose of relying on the fraudulent agreed judgments entered in November of 2011 as a pretext for becoming judgment proof as part of the Illegal Rarity Conveyance Enterprise and Conspiracy.

236. Subsequently, Defendants Michael Ross and Ted Doukas devised a scheme through which Mr. Doukas would purchase the First American Title judgment at a steep discount and then attempt to use the judgment to hinder, delay and defraud Mr. Stooksbury following the judgment rendered against the Judgment Debtors in the 2009 Federal RICO case.

237. On or about April 30, 2012, after entities controlled by Ted Doukas had already entered into the conveyances, transactions and agreements referenced above which by their express terms purported to give a nearly seven million dollar agreed judgment to Athena of SC, LLC, against Tellico Lake Properties, LP, and, further, purported to transfer all of the assets of

66

Tellico Lake Properties, LP, to American Harper Corporation (through the March 20, 2012, Agreement), Mr. Doukas bought the First American Title judgment for approximately one-fifth of its value through an entity he owned called Breton Equity Company Corp.

238. Based on the objective circumstances and Mr. Doukas' course of conduct since purchasing the First American Title judgment, it is clear that Mr. Doukas, in collaboration with Mr. Ross, intended to use the judgment for the purposes of attempting to hinder, delay and defraud Mr. Stooksbury and the judgment previously obtained by Mr. Stooksbury in the 2009 Federal RICO case.

239. Following the filing of the Receiver's report in the 2009 Federal RICO case which indicated that Mr. Doukas and Mr. Ross had been involved in fraudulent conveyances, Mr. Doukas, through Breton Equity Company Corp., filed a petition in the United States Bankruptcy Court in Knoxville seeking to put Tellico Lake Properties, LP, into a Chapter 7 bankruptcy. *See* United States Bankruptcy Court, In Re: Tellico Lake Properties, LP, no. 3:12-bk-34034. Petition [Doc. 1].

240. Mr. Stooksbury specifically contends that Mr. Doukas, himself and through Breton Equity Company Corp., filed the referenced Chapter 7 bankruptcy petition for the purpose of hindering, delaying and/or defrauding Mr. Stooksbury. Indeed, the letter written by Gary Goldstein, counsel for Mr. Doukas, on October 10, 2012, reflects Mr. Doukas' desire to hinder or delay, if not block altogether, the ongoing, extensive investigation of the Receiver into the conduct of Mr. Doukas, Mr. Ross, and their related entities and to attempt to force a new "Trustee" to start over with new counsel. Gary Goldstein writes: "As you know, an involuntary petition in bankruptcy was filed by Athena of SC, LLC (sic) against Tellico Lake Properties,

LLC . . . . all actions . . . are stayed. Once an Order for Relief has been entered, an independent Trustee, most likely a panel Trustee, will be appointed to liquidate the assets of the Chapter 7 debtor, and process the claims. The Trustee, who will not be the current Receiver, will select counsel who shall not be the Receiver's counsel." A true copy of Mr. Goldstein's letter is hereto attached as **Exhibit 47.**

241.    Further, Mr. Stooksbury affirmatively states that Breton Equity Company Corp. was at all relevant times a sham entity that was grossly undercapitalized and was used as the instrumentality of Mr. Doukas in furtherance of the Illegal Rarity Conveyance Enterprise and Conspiracy. Accordingly, such entity should be disregarded and all conduct and liabilities of Breton Equity Company Corp. should be found to be the conduct and resulting liabilities of Ted Doukas and/or Michael Ross.

242.    In furtherance of the Illegal Rarity Conveyance Enterprise and Conspiracy, during relevant times and including the time period from January 1, 2012, through the present, Mr. Ross, with the consent of Defendant Evelyn Ross, operated and controlled Rarity Bay Realty, Inc., in a manner allowing Mr. Ross to receive cash and profits from Rarity Bay operations. Plaintiff specifically states that Mr. Ross was at all times the owner in fact of Rarity Bay Realty, Inc. and that Mr. Ross had simply put the stock of Rarity Bay Realty, Inc., in the name of someone else in order to hinder, delay and defraud Mr. Stooksbury and Mr. Stooksbury's claims in the 2009 Federal RICO case.

243.    As part of Mr. Ross' effort to shield funds and assets improperly, Mr. Ross initially gave all of the stock in Rarity Bay Realty, Inc., to his niece, Defendant Rebecca Ross Jordan, for no consideration.

244. Subsequently, in recognition of Ms. Jordan's exposure for liability to Mr. Stooksbury in the 2009 Federal RICO case, Mr. Ross caused Ms. Jordan's interest in Rarity Bay Realty, Inc., to be transferred to Mr. Ross' wife, Evelyn Ross, for no consideration.

245. Plaintiff affirmatively states that Mr. Ross has at all relevant times maintained control of Rarity Bay Realty, Inc.

246. Further, Plaintiff affirmatively states that Rarity Bay Realty, Inc., was a sham entity that was used, at all relevant times, as the instrumentality of Mr. Ross and that accordingly, said business entity should be disregarded and all cash flow and assets of said entity should be deemed to be the property of Mr. Ross, such that all such funds and assets should be identified and used to satisfy the Judgment in the 2009 Federal RICO case.

247. Further, the conduct of Evelyn Ross in serving as a nominal owner of Rarity Bay Realty has been committed in furtherance of the Illegal Rarity Conveyance Enterprise and Conspiracy, rendering her separately and independently liable to the Plaintiff based on the causes of action stated below.

248. Accordingly, Plaintiff specifically states that the corporate structure of Rarity Bay Realty Company, Inc. should be disregarded and Rarity Bay Realty Company, Inc. should be treated as a sham entity, such that Defendants Michael Ross and Evelyn Ross are jointly and severally liable to the Plaintiff for its conduct and participation in the referenced illegal enterprise and conspiracy.

249. Plaintiff affirmatively states that Rarity Bay Realty Company, Inc., at all relevant times, has been operated for the purpose of wrongfully attempting to shield income and assets from the reach of Mr. Stooksbury's claims in the 2009 Federal RICO case.

69

250.    Similarly, also as part of Mr. Ross' effort to shield funds and assets improperly,

Mr. Ross established a shell entity called Consumer Research Company and put the company in

his wife's name.

251.    Based upon information and belief, as part of the Illegal Rarity Conveyance

Enterprise and Conspiracy, Mr. Ross has used Consumer Research Company as a conduit and/or

pass-through for improperly obtained funds and assets as a means of attempting to hinder, delay

or defraud Mr. Stooksbury.

252.    Plaintiff affirmatively states that Mr. Ross has at all relevant times maintained

actual control of Consumer Research Company and that Mrs. Ross, though complicit in the

arrangement, had no significant role in the operation of the entity.

253.    Further, Plaintiff affirmatively states that Consumer Research Company was a

sham entity that was used, at all relevant times, as the instrumentality of Mr. Ross and that

accordingly, said business entity should be disregarded and all cash flow and assets of said entity

should be deemed to be the property of Mr. Ross, such that all such funds and assets should be

identified and used to satisfy the Judgment in the 2009 Federal RICO case.

254.    Further, the conduct of Evelyn Ross in serving as a nominal owner of Consumer

Research Company has been committed in furtherance of the Illegal Rarity Conveyance

Enterprise and Conspiracy, rendering her separately and independently liable to the Plaintiff

based on the cases of action stated below.

255.    Accordingly, Plaintiff specifically states that the corporate structure of Consumer

Research Company should be disregarded and Consumer Research Company should be treated

as a sham entity, such that Defendants Michael Ross and Evelyn Ross are jointly and severally

70

liable to the Plaintiff for its conduct and participation in the referenced illegal enterprise and conspiracy.

256. Similarly, and as part of Defendant Ted Doukas' participation in the subject Illegal Rarity Conveyance Enterprise and Conspiracy, Mr. Doukas used an entity of his known as Efastos Corp. in furtherance of the operation of illegal enterprise and conspiracy.

257. Based upon information and belief, as part of the Illegal Rarity Conveyance Enterprise and Conspiracy, Mr. Doukas transferred funds from Efastos Corp. to John Stravato's trust account as part of the series of transactions comprising the multi-party agreement generally described in paragraphs 85 through 86 (and elsewhere) above.

258. Accordingly, Efastos Corp. was an active participant in the subject Illegal Rarity Conveyance Enterprise and Conspiracy and committed two or more predicate acts during relevant times in furtherance of the goals of the enterprise.

259. Further, Plaintiff affirmatively states that Efastos Corp., was a sham entity that was used, at all relevant times, as the instrumentality of Mr. Doukas and that accordingly, said business entity should be disregarded and all cash flow and assets of said entity should be deemed to be the property of Mr. Doukas.

260. Additionally, on account of said entity's participation in the Illegal Rarity Conveyance Enterprise and Conspiracy, all such funds and assets of Efastos Corp. used to facilitate the multi-party agreement should be deemed to be forfeited by Mr. Doukas and Efastos Corp. pursuant to the equitable doctrine of unclean hands.

261. Plaintiff specifically contends that the conduct referenced in paragraph 256 through 260 above was committed with an intent to hinder, delay or defraud Mr. Stooksbury.

71

.

262.   Plaintiff asserts that Patricia Ross personally committed wrongful acts and is individually liable to Plaintiff on account of Ms. Ross having facilitated, having signed documents, and having assented to the transfer of assets of the Estate of Dale Ross in furtherance of the Illegal Rarity Conveyance Enterprise and Conspiracy.

263.   Further, Plaintiff contends that Ms. Ross, in her individual capacity and during the calendar years 2011 and 2012, as well as other times during the pendency of the 2009 Federal RICO case, collected, received and deposited rental income and other income from the Judgment Debtors and deposited that income into accounts in names other than those of the Judgment Debtors which in turn hindered, delayed and defrauded Mr. Stooksbury.

264.   Plaintiff contends that each act committed by Ms. Patricia Ross as has been generally referenced in paragraphs 262 and 263 constitutes a separate predicate act in furtherance of the subject illegal enterprise and conspiracy.

265.   Plaintiff avers that Defendant Michael Ross used several business entities as his instrumentalities for the purpose of shielding income and transferring assets as part of the Illegal Rarity Conveyance Enterprise and Conspiracy, including but not limited to: Defendants NJS Development Company, LLC; WH McCollum & Co., LLC; Pine Mountain Partnership; Pine Mountain Properties, GP; RMT Cottages, LLC; RMT Properties, LLC; RMT Properties, LP; RMT Village Shops, LLC; CC Properties, LLC; RFD, LLC; Vonore Properties, LLC; and Tellico Communities, LLC.

266.   Based upon information and belief, Mr. Ross transferred property and assets to and/or from each entity referenced in paragraph 265 above during the relevant time period in an effort to hinder, delay or defraud Mr. Stooksbury.

72

267. Based upon information and belief, each such entity referenced in paragraph 266, above, committed wrongful predicate acts at relevant times in furtherance of the subject illegal enterprise and conspiracy.

268. Further, Plaintiff affirmatively states that each entity referenced in paragraph 266 above was a sham entity that was used, at all relevant times, as the instrumentality of Mr. Ross and that accordingly, each such business entity should be disregarded and all cash flow and assets of each such entity should be deemed to be the property of Mr. Ross, such that all such funds and assets should be identified and used to satisfy the Judgment in the 2009 Federal RICO case.

269. Based upon information and belief, Defendant RM Company, LLC, a Judgment Debtor, fraudulently conveyed property to a third party in furtherance of the subject Illegal Rarity Conveyance Enterprise and Conspiracy and in an effort to hinder, delay or defraud Mr. Stooksbury.

270. Specifically, Mr. Ross, as owner of RM Company, LLC, gave a third party an executed quitclaim deed purporting to transfer 12 lots in McMinn County, Tennessee, being lots 63, 64, 65, 80, 81, 82, 83, 89, 90, 91, 93, and 95 in Phase One of Rarity Meadows.

271. Based on the friendly, pre-arranged agreed judgments and various agreements purportedly entered between Mr. Ross and Mr. Doukas and entities owned and controlled by them as are generally referenced herein, as well as similar agreements which may be discovered either during the continuing investigation of this matter or during discovery in this case, Mr. Ross, his relatives, and their various entities who are Judgment Debtors in the 2009 Federal RICO case purport to have conveyed all of their real property, personal property, and assets to

73

Mr. Doukas' entities. Mr. Stooksbury contends that all such conveyances were and are fraudulent conveyances which were made without adequate consideration, with no consideration, or with illegal or invalid consideration which should be found to be fraudulent.

272. More specifically, based on the multi-party agreement and agreed judgments referenced above, Ted Doukas and Michael Ross have ostensibly transferred the assets of Judgment Debtors / Ross entities Tellico Lake Properties, LP, LTR Properties, Inc., Rarity Management Company, LLC, and Michael Ross personally to various entities formed by Mr. Doukas, including but not limited to Athena of SC, LLC, and American Harper Corporation, as a means of putting the assets of the Judgment Debtors / Ross entities beyond the reach of Mr. Stooksbury as a creditor. Mr. Doukas and Mr. Ross have essentially been using the various Doukas entities which are Defendants herein as their instrumentalities in a *de facto* joint enterprise and/or joint venture for the benefit of themselves and their relatives, including Giselle Doukas, Evelyn Ross, Rebecca Ross Jordan, and/or Patricia Ross.

273. The transfers referenced herein were accomplished in conjunction with and in concert with other transfers by and between the Defendants herein and related parties for the purpose of hindering, delaying and defrauding Mr. Stooksbury; and most, if not all of these transfers were accomplished through the use of the mail, phone lines, wires, and/or the internet. This conduct was masterminded by and on behalf of Mr. Ross, Mr. Macri and Mr. Doukas and their agents and was facilitated by relatives of Mr. Ross and Mr. Doukas as well as by various business entities owned and/or controlled by them, including but not limited to the business entity Defendants named herein.

74

274. Mr. Doukas and Mr. Ross have continued to conspire to work together, through their agents, to conjure up documents in an effort to establish a paper trail that might cover their Illegal Rarity Conveyance Enterprise and Conspiracy, even after the appointment of a Receiver on or about May 23, 2012, as part of post-judgment proceedings in the 2009 Federal RICO case; an example of this conduct is an e-mail sent from an attorney for Mr. Doukas, Gary Goldstein, which was then forwarded to Mr. Ross on July 12, 2012 at 3:50 p.m., and states:

> I did complete redraft. See the enclosed in pdf and word format. We have to show real consideration and fight about the allocation later. That way if the Receiver gets a copy which we can assume he will you still have an argument that it was not a fraudulent conveyance from Rebecca Jordan.
>
> This also helps to provide an explanation for Mark [Brown] to relate to the Judge what happened.
>
> Try and get it signed ASAP and return to me for Mark

A true copy of this e-mail is hereto attached as **Exhibit 48**.

## COUNT I: RICO VIOLATIONS 18 U.S.C. § 1962 – BANKRUPTCY FRAUD, WIRE FRAUD

### Predicate Acts Forming A Pattern Of Conduct Committed During the Course Of The Subject Enterprise and Conspiracy

275. The contentions stated in paragraphs 1 through 274 above are incorporated in this Count by this specific reference.

276. As set forth in detail above, Defendants, themselves and through their agents, engaged in an illegal and fraudulent scheme to hinder, delay and defraud Mr. Stooksbury and his claims in the 2009 Federal RICO case by executing various agreements, conveyances, and agreed judgments.

75

277.    A central component of the multi-party agreement referenced in paragraphs 85 and 86 (and elsewhere) was the improper conveyance of a key asset of VPI Company, LLC, the Declarant's Rights at Rarity Enclave, outside said entity's pending bankruptcy action when the asset had not been disclosed to the United States Bankruptcy Court.

278.    Moreover, as has been discussed in greater detail above, the Declarant's Rights at Rarity Enclave were exchanged during the referenced multi-party agreement for the transfer of the SunTrust notes and the expected deficiency judgment against VPI Company, LLC to a designee of Mr. Ross' attorney in the 2009 Federal RICO case.

279.    The rights and assets exchanged during the multi-party agreement between Mr. Ross, Mr. Macri, Mr. Doukas, and entities controlled by them served as the predicate and foundation for numerous wrongful acts thereafter by these individuals and entities, as well as related individuals and entities, many of which are outlined above.

280.    Said conduct, along with other conduct described herein, was committed on a regular and consistent basis by and between the Defendants and their agents and comprised a significant part of the pattern of predicate acts committed during the operation of the subject Illegal Rarity Conveyance Enterprise and Conspiracy.

281.    The acts and omissions comprising the pattern of illegal and improper conduct generally referenced above were the proximate and legal cause of significant damages and losses sustained by individuals such as Mr. Stooksbury.

282.    Said conduct, along with the other conduct described herein, was committed on a regular and consistent basis during the pendency of the 2009 Federal RICO case, and in

76

particular between August of 2011 through the present, and comprised a significant part of the pattern of predicate acts committed during the operation of the subject enterprise and conspiracy.

283. Plaintiff specifically pleads that the wrongful conduct described in the factual allegations contained in each of the legal actions referenced above, as well as the wrongful conduct as is reflected in the attached exhibits to those actions, are predicate acts which comprises the illegal enterprise and conspiracy described herein.

284. As a direct and proximate result of said wrongful and fraudulent conduct which was committed by and/or which is attributable to the Defendants herein, Mr. Stooksbury suffered economic damages and losses which are described more fully below.

285. Each of the Defendants herein is a "person" as defined by 18 U.S.C. § 1961(3), because each is an entity capable of holding a legal or beneficial interest in property.

286. Defendants herein who participated in the activities of the Illegal Rarity Conveyance Enterprise and Conspiracy described in this Complaint are collectively an "enterprise" within the meaning of 18 U.S.C. § 1961(4), which allows groups of individuals associated in fact though not a legal entity to be an enterprise. The enterprise had: a common purpose, described *infra*; an ongoing structure or organization supported by personnel or associates with continuing functions or duties; relationships among those associated with the enterprise; and longevity sufficient to permit those associates to pursue the enterprise's purpose.

287. Upon information and belief, a hierarchy and joint venture by and between Defendants Michael Ross, Ted Doukas and James Macri existed as leaders, while the other individual Defendants named herein participated in and/or facilitated the implementation of the enterprise's affairs.

77

288.    The enterprise is distinct from the pattern of racketeering activity in which the Defendants have engaged and the enterprise is distinct from any one defendant.

289.    Each of the Defendants knowingly agreed to facilitate, to operate or to manage the enterprise.

290.    The activities of the enterprise and/or the predicate acts of racketeering affected interstate commerce during the relevant time period, including but not limited to the time period between August of 2011 through the present.  As described *infra*, the enterprise consisted of the conveyance and/or transfer of assets without adequate consideration, or with improper or insufficient consideration, for the purpose of hindering, delaying and defrauding Mr. Stooksbury and Mr. Stooksbury's claims and judgment in the 2009 Federal RICO case.

291. The Defendants engaged in a pattern of racketeering activity, as defined in §1961(5), because two or more acts of racketeering activity were committed, the last of which occurred within two years after the commission of a prior act of racketeering activity.   Further, the conduct in the subject illegal enterprise and conspiracy consisted of numerous acts committed frequently throughout the pendency of the 2009 Federal RICO case, and in particular between August of 2011 and the present.

292.    These acts were related, as has been described *supra*, because:  (1) the same or similar purpose was to hinder, delay and defraud Mr. Stooksbury; (2) the same or similar results are that Mr. Stooksbury has been hindered, delayed and defrauded in attempting to collect his judgment in the underlying 2009 Federal RICO matter; (3) the same or similar participants are Defendants Ross, Doukas, Macri, the relatives of Mr. Ross and Mr. Doukas who are individual Defendants herein, and the various business entity Defendants herein in which the individual

78

Defendants have an interest, all of whom participated in the activities described in this Complaint and constitute the enterprise; (4) the enterprise has the same victim, which is Mr. Stooksbury; and (5) the same or similar methods of commission are, for example, that members of the enterprise and their agents would execute agreements, plans and documents with an intent to hinder, delay and defraud Mr. Stooksbury.

293.    The acts referenced herein were continuous, both because a series of related acts were committed which extended over a substantial period of time and because there is the thread of continuity given that the predicate acts of racketeering were a regular way the individual Defendants (and their related business entities) were conducting business and enjoying the profits of the illegal enterprise and conspiracy.

294.    The wrongful conduct described above in furtherance of the illegal Rarity Conveyance Enterprise and Conspiracy constitutes a pattern of predicate acts of the racketeering activity attributable to the Defendants, on account of Defendants' conduct.

295.    Defendants committed mail fraud, wire fraud, and/or bankruptcy fraud by committing the predicate acts of racketeering activity referenced above as part of a scheme to defraud, which resulted in a foreseeable injury to Mr. Stooksbury and which acts are indictable under 18 U.S.C. §§ 1341, 1343.

296.    As part of the fraud, Defendants committed the predicate acts and schemes referenced above and money or property was an object of those schemes.  Upon information and belief, Defendants and/or their agents used the United States mail, the internet, wire, and/or fax machines on a regular basis during said time period in interstate commerce to further the scheme.

297.    For example, when Mr. Stravato, as agent for Mr. Ross and/or Mr. Doukas, wired

the $1,560,000 for Mr. Shanks (in two installments on two separate occasions) to hold "in escrow," Defendants Ross, Macri and Doukas were furthering a scheme to defraud; money or property was an object of that scheme; and they used mail and/or wire to further the scheme.

298. Similarly, when the various e-mails were exchanged in furtherance of the illegal enterprise that have been referenced above, each act of sending or receiving each such e-mail constituted a predicate act in furtherance of the illegal enterprise and conspiracy.

299. Each of the various predicate acts by Defendants was committed well within ten years of each other and were committed on a regular, periodic basis, such that they are sufficiently related to form a pattern of racketeering activity.

300. As examples of the conduct on the part of Defendants Macri, Ross, Doukas, and their referenced respective business entity Defendants which constitutes bankruptcy fraud, Defendants committed the following predicate acts of racketeering activity as part of a scheme to defraud, which resulted in a foreseeable injury to others and which acts are indictable under 18 U.S.C. §152.

301. During the course of negotiations regarding the First Bank Note encumbering Rarity Enclave as set forth above, Defendants James Macri, Michael Ross, Ted Doukas, said Defendants' agents, and the business entities controlled by them had actual knowledge that VPI Company, LLC, was in Chapter 11 bankruptcy in the United States District Court for the Eastern District of Tennessee, and that the Covenants, Conditions and Restrictions for Rarity Enclave ("the Declarant's Rights for Rarity Enclave") were owned by VPI Company, LLC, and were a valuable asset belonging to VPI Company, LLC.

302.     Nevertheless, none of said Defendants disclosed to the United States Bankruptcy Court the fact that they were exchanging and conveying the Declarant's Rights for Rarity Enclave as part of their multi-party agreement negotiated and executed in September of 2011, outside of the bankruptcy proceedings.

303.     To the contrary, the parties to the multi-party agreement took affirmative steps to conceal the conveyance of the Declarant's Rights at Rarity Enclave to Tennessee Land and Lakes until after the pending bankruptcy action of VPI Company, LLC, had been dismissed.

304.     In violation of 18 U.S.C. § 152, Defendants knowingly concealed from officers of the Court the Declarant's Rights of Rarity Bay in connection with the VPI, LLC bankruptcy case and, further, had actual or constructive knowledge that VPI Company, LLC, through Michael Ross, had knowingly made one or more false entries in recorded bankruptcy filings relating to the property and financial affairs of VPI Company, LLC.

305.     As has been outlined in significant detail above, Defendants engaged in a series of negotiations, conveyances and transfers, through various e-mails and communications over the phone, fax machine, internet, and wire, during their commission of the various predicate acts comprising the Illegal Rarity Conveyance Enterprise and Conspiracy; as a result of the illegal enterprise and conspiracy, Defendants transferred all or substantially all of their assets to other individuals or entities in derogation of Mr. Stooksbury's claims and resulting judgment in the 2009 Federal RICO case.

306.     Plaintiff has standing to bring these claims because he is a person who has sustained injury to his business or property by reason of the Defendants' conduct.

81

307. Specifically, Mr. Stooksbury has a significant judgment against the Judgment Debtors in the 2009 Federal RICO case, including but not limited to a significant judgment against Defendants Michael Ross, Rebecca Jordan, Patricia Ross on behalf of the estate of Dale Ross, Tellico Lake Properties, LP, Rarity Management Company, LLC, LTR Properties, LLC, and VPI Company, LLC.

308. Plaintiff incorporates herein by reference the contemporaneously filed Civil RICO Statement.

309. The predicate acts referenced above occurred well within ten years of each other and were committed on a regular, periodic basis by and between the Defendants, such that they are sufficiently related to form a pattern of racketeering activity. Each of the Defendants participated in, influenced, facilitated, and/or aided and abetted the transactions.

310. As a direct and proximate result of the wrongful and illegal conduct which was committed by and/or is attributable to the Defendants, Plaintiff suffered significant financial losses and has been prevented from collecting on the 2009 Federal RICO Judgment.

## 18 U.S.C. § 1962(c)

311. The allegations in paragraphs 1 through 310 are incorporated herein by reference.

312. The enterprise defined in said paragraphs is an enterprise in which Defendants engaged; Defendants' activities affected interstate commerce; and Defendants were employed by and/or were associated with said enterprise at all relevant times.

313. Defendants were employed by or were associated with the Illegal Rarity Conveyance Enterprise and Conspiracy described in this Complaint and participated in the

82

conduct of the enterprise's affairs, either directly or indirectly, through a pattern of racketeering activity.

314.    Further, Defendants' conduct in the various predicate acts generally described herein which were committed in furtherance of the Illegal Rarity Conveyance Enterprise and Conspiracy included two or more predicate acts of bankruptcy fraud, wire fraud, and/or mail fraud in violation of 18 U.S.C. §§ 152, 1341, and 1343.

315.    As direct and proximate result of said conduct, Plaintiff suffered the injuries and losses referenced herein.

### 18 U.S.C. § 1962(d)

316.    The allegations of paragraphs 1 through 315 are incorporated herein by reference.

317.    As set forth above, the 1962(d) Defendants agreed and conspired to violate 18 U.S.C § 1962(c). Defendants have intentionally conspired and agreed to directly and indirectly use or invest income that is derived from the pattern of racketeering activity described above, which was an interstate enterprise.

318.    Defendants acquired or maintained interests in the enterprise through a pattern of racketeering activity, and conducted and participated in the conduct of the affairs through a pattern of racketeering activity. Defendants knew that their predicate acts were part of a pattern of racketeering activity and agreed to the commission of those acts to further the scheme described above. Accordingly, based on the acts and omissions referenced above, said conduct of the individual Defendants and their related business entities constitutes a conspiracy to violate 18 U.S.C. § 1962(c), in violation of 18 U.S.C. § 1962(d).

83

319. As a direct and proximate result of the conduct referenced above, Mr. Stooksbury has suffered damages and losses, including but not limited to the value of the assets of the Judgment Debtors which were unlawfully and wrongfully conveyed; the costs of investigating and prosecuting this action, which Plaintiff specifically states was foreseeable and was a direct consequence of the conduct of the Defendants herein; and the investment value and/or interest on said amounts.

### 18 U.S.C. § 1964(c)

320. Because of Defendants' violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§1961, *et seq.*, in the manner described herein, Defendants are liable to Plaintiff for treble damages and all attorneys' fees and costs in accordance with 18 U.S.C. § 1964(c) and Plaintiff specifically requests that relief.

### COUNT II: FRAUD ON THE COURT / VIOLATION OF FEDERAL COMMON LAW

321. The contentions stated in paragraphs 1 through 320 above are incorporated in this Count by this specific reference.

322. The wrongful conduct of the Defendants outlined above constitutes a fraud on the Court in violations of federal common law.

323. Plaintiff specifically states that each of the Defendants and their agents in this action either participated in or facilitated the Illegal Rarity Conveyance Enterprise and Conspiracy described above.

324. Defendants and their agents engaged in this conduct either with the actual intent to commit a fraud on the United States District Court for the Eastern District of Tennessee and/or the United States Bankruptcy Court for the Eastern District of Tennessee or with the intent to

84

facilitate said conduct at times when the Defendants knew or should have known that their conduct was wrongful, illegal, and fraudulent.

325.    By virtue of Defendants' wrongful acts and omissions, as well as acts committed in furtherance of the illegal Rarity Conveyance Enterprise and Conspiracy described above, each Defendant herein either committed actual or constructive fraud and said fraud subverted the integrity of the Court itself.

326.    Plaintiff specifically states that Defendants' wrongful conduct was the proximate and legal cause of Plaintiff's damages and losses, in that despite Defendants' actual and/or constructive notice of Plaintiff's claims in the 2009 Federal RICO case, Defendants' conduct rendered the Judgment Debtors insolvent and unable to satisfy the Court's Judgment in the underlying 2009 Federal RICO case.

327.    Further, as a direct and proximate result of said conduct, Mr. Stooksbury has suffered damages and losses, including but not limited to the value of the assets of the Judgment Debtors which were unlawfully and wrongfully conveyed; the costs of investigating and prosecuting this action, which Plaintiff specifically states was foreseeable and was a direct consequence of the conduct of the Defendants herein; and the investment value and/or interest on said amounts.

## COUNT III: FRAUDULENT TRANSFER
### T.C.A. § 66-3-301 et. seq.

328.    The contentions stated in paragraphs 1 through 327 above are incorporated in this Count by this specific reference.

329.    Pursuant to T.C.A. § 66-3-302 the Plaintiff is a "Creditor" who has a "Claim" against Defendants.

85

330. Pursuant to T.C.A. § 66-3-302, each of the Defendants was an "insider" and/or "affiliate" at the time of the conveyances that are outlined and referenced in the Complaint, *supra*.

331. Each of the transactions made and each of the obligations incurred by the Judgment Debtors who are Defendants herein as outlined and referenced in the Complaint, *supra*, was made or incurred with the actual intent to hinder, delay, or defraud the Plaintiff in violation of T.C.A. § 66-3-305(a)(1).

332. Additionally, each of the transactions made and each of the obligations incurred by the Judgment Debtors who are Defendants herein as outlined and referenced in the Complaint, *supra*, was made or incurred by the respective Defendant(s) without the Judgment Debtor / Defendant having received a reasonably equivalent value in exchange for the transfer or obligation; further, at the same time of each such transaction made and each such obligation incurred, said Judgment Debtor / Defendant either was engaged in or was about to engage in a business or a transaction for which the remaining assets of the Judgment Debtor / Defendant were unreasonably small in relation to the business or transaction, or said Judgment Debtor / Defendant intended to incur, or believed or reasonably should have believed that said Judgment Debtor / Defendant would incur debts beyond the debtor's ability to pay, in violation of T.C.A. § 66-3-305(a)(2).

333. With respect to each of the transactions made or obligations incurred that are described generally in the Complaint, *supra*, one or more of the following factors was present: the transfer or obligation was to an insider or affiliate; the Judgment Debtor retained substantial *de facto* control over the asset(s) after the transaction was made or the obligation was incurred;

86

the transfer or obligation was initially concealed; before the referenced events, the Judgment Debtor / Defendant had been sued; the series of transactions rendered the Judgment Debtor/ Defendant substantially insolvent; the Judgment Debtor / Defendant had taken steps to conceal or transfer assets to another person or entity prior to the referenced event; the value received by the Judgment Debtor/ Defendant was unreasonably small and not equivalent for the particular transaction; and/or essential assets of the Judgment Debtor / Defendant were transferred to a lienor who then transferred the assets to an insider or affiliate of the Judgment Debtor / Defendant.

334. Further, each of the transactions made and each of the obligations incurred by the Judgment Debtors who are Defendants herein as outlined and referenced in the Complaint, *supra*, was made or incurred by the respective Defendant(s) without the Judgment Debtor / Defendant having received a reasonably equivalent value in exchange for the transfer or obligation; further, each such transaction or obligation and/or as the transactions or obligations involving each of the Judgment Debtors as described herein, when taken as a whole, rendered the Judgment Debtors substantially insolvent and, accordingly, each such transaction made or obligation incurred by the Judgment Debtors/ Defendants which are referenced in the Complaint, *supra*, violate T.C.A. § 66-3-306.

335. As a direct and proximate result of the conduct referenced above, Mr. Stooksbury has suffered damages and losses, including but not limited to the value of the assets of the Judgment Debtors which were unlawfully and wrongfully conveyed; the costs of investigating and prosecuting this action, which Plaintiff specifically states was foreseeable and was a direct

87

consequence of the conduct of the Defendants herein; and the investment value and/or interest on said amounts.

## COUNT IV: INJUNCTIVE RELIEF

336. The contentions stated in paragraphs 1 through 335 above are incorporated in this Count by this specific reference.

337. Based on the wrongful, illegal and fraudulent conduct committed by Defendants, the Receiver previously appointed in the 2009 Federal RICO case should be immediately appointed as Receiver in this related action.

338. Further, the Receiver should be allowed to have immediate oversight, if not custody and control, of any and all assets that are the subject of this action pending a final resolution of this case to preserve said assets and to prevent further waste of said assets, with all costs incurred by the Receiver in performing his work and protecting and preserving said assets being paid out of the Receivership.

339. Additionally, to the extent the Receiver does not take possession of any of the referenced assets, Defendants should be enjoined from wasting or dissipating any such assets, including but not limited to the Rarity Bay golf course, the Rarity Bay golf club, the Rarity Bay boat docks and other related amenities.

340. For these same reasons, Defendants should be required to provide promptly to the Receiver a full and complete accounting of their use of each asset that is part of the subject matter of this action, including but not limited to the Judgment Debtors'/ Defendants' property, property rights, profits, and any income obtained through any operations or on account of any property rights.

88

341. Defendants should be enjoined from making any sales, transfers, conveyances, gifts, or encumbrances of any kind with regard to any of the assets that are the subject of this action or assets in which any of the Judgment Debtors have any interest pending the resolution of this action and the full satisfaction of Plaintiff's Judgment in the 2009 Federal RICO case.

342. It is appropriate for the Court to waive the bond requirement under Rule 65(c), because the harm as a result of issuance of the injunction can be minimized by the appointment of the Receiver.

343. If Defendants are permitted to conceal, sell, transfer, dispose, lease, assign, or remove money and property, Plaintiff will suffer immediate and irreparable harm because his chances of ever enforcing the Federal RICO Judgment will be compromised, if not eliminated.

## COUNT V: PUNITIVE DAMAGES

344. The contentions stated in paragraphs 1 through 343 above are incorporated in this Count by this specific reference.

345. Plaintiff specifically states that Defendants' conduct during the commission of the acts outlined above was intentional, reckless, and/or fraudulent such that punitive damages should be assessed against Defendants in the amount the trier of fact deems appropriate and just.

## COUNT VI: UNJUST ENRICHMENT

346. The contentions stated in paragraphs 1 through 345 above are incorporated in this Count by this specific reference.

347. Regardless of whether some of the individual Defendants had actual knowledge of the fraud being committed by the leaders of the subject illegal enterprise and conspiracy, all of

the Defendants profited from the ill-gotten gain generated by the fraudulent and wrongful conduct that is the subject of this action.

348. Accordingly, Plaintiff specifically asserts pendent state law equitable claims in this case for unjust enrichment and states that each Defendant herein is liable to Plaintiff for the amount of funds, profits, and/or assets each such Defendant has enjoyed and/or used and/or benefited from as a result of said fraudulent and wrongful conduct.

349. Further, to the extent any of the ill-gotten gain generated or obtained as a result of the fraudulent and wrongful conduct was used to purchase life insurance policies or has been deposited into any investment account, 401(k) account, IRA account, or retirement account of any kind, any and all such funds should be found to be forfeited and paid over to the Plaintiff in satisfaction of Plaintiff's damages herein.

## COUNT VII: UNCLEAN HANDS AND EQUITABLE RELIEF

350. The contentions stated in paragraphs 1 through 349 above are incorporated in this Count by this specific reference.

351. Defendants should be found to have forfeited any and all interest in any asset that is part of the subject matter of this action, as well as any profits generated from the use of any such asset, pursuant to equitable principles and doctrines of equity, including but not limited to the doctrine of unclean hands.

352. For these same reasons, to the extent any Defendant may be shown to have invested money and/or assets during the course of any of the conduct that is the subject of this case and/or in furtherance of any of the predicate acts that are the subject of the Illegal Rarity

90

Conveyance Enterprise and Conspiracy, all such funds and/or assets should be deemed forfeited pursuant to the doctrine of unclean hands.

353. Plaintiff specifically contends that Ted Doukas, Mike Ross, Jim Macri, and/or any business entity owned and/or controlled by one or more of them should be found to have forfeited any and all funds used to purchase the SunTrust notes, the First Bank note, and/or any other note, judgment, or commercial paper in furtherance of the Illegal Rarity Enterprise and Conspiracy and that in equity, all such funds and any collateral, rights, or obligations associated with either the funds or the notes, judgments or commercial paper should be paid over to the Plaintiff in satisfaction of Mr. Stooksbury's claims in the 2009 Federal RICO case.

354. Similarly, to the extent any Defendant may be shown to have profited from any funds used or any assets obtained during the course of the Illegal Rarity Conveyance Enterprise and Conspiracy, all such profits should be paid over to the Plaintiff in satisfaction of Mr. Stooksbury's claims in the 2009 Federal RICO case pursuant to principles of equity, including but not limited to the doctrine of unclean hands and the doctrine of the fruit of the poisonous tree.

355. Moreover, based on the same principles of equity, to the extent any Defendant may be shown to have obtained any assets during the course of the operation of the Illegal Rarity Conveyance Enterprise and Conspiracy, all such assets should be allowed to be seized either by the Receiver or by the United States Marshal and sold, with the proceeds to be paid over to the Plaintiff in satisfaction of Mr. Stooksbury's claims in the 2009 Federal RICO case.

## PLAINTIFF'S DAMAGES

356.    The contentions stated in paragraphs 1 through 355 above are incorporated in this Count by this specific reference.

357.    As a direct and proximate result of the wrongful and illegal conduct which was committed by and/or attributable to the Defendants as described above, Robert T. Stooksbury has suffered significant financial losses and damages, which are approximately equivalent to the amounts awarded to Plaintiff in the 2009 Federal RICO case, plus the costs of investigating and prosecuting this action and pre-judgment interest.

358.    Further, as has been referenced above, based on the RICO violations referenced above and in accordance with the provisions of 18 U.S.C. § 1964(c), Plaintiff seeks treble damages and all attorneys' fees and costs incurred in the course of investigating and prosecuting this action.

359.    Based on the Tennessee state law violations referenced above, Plaintiff is entitled to punitive damages in the amount the trier of fact deems appropriate and just, not to exceed twice the amount of Plaintiff's compensatory damages generally referenced above.

WHEREFORE, Plaintiff Stooksbury respectfully requests:

1.    That process issue and be served upon the Defendants requiring them to answer this Complaint within the time and manner prescribed by law;

2.    That the Receiver previously appointed in the 2009 Federal RICO case be immediately appointed as Receiver in this related action;

3.    That the Receiver be allowed to have immediate oversight, if not custody and control, of any and all assets that are the subject of this action pending a final resolution of this

92

case to preserve said assets and to prevent further waste of said assets, with all costs incurred by the Receiver in performing his work and protecting and preserving said assets being paid out of the Receivership, and further that to the extent the Receiver does not take possession of any of the referenced assets, that Defendants be enjoined from wasting or dissipating any such assets, including but not limited to the Rarity Bay golf course, the Rarity Bay boat docks and other related amenities;

4.     That the Defendants be required to provide promptly to the Receiver a full and complete accounting of their use of each and every asset that is part of the subject matter of this action, including but not limited to property, property rights, profits, and any income obtained through any operations or on account of any property rights;

5.     That Defendants be found to have forfeited any and all interest in any asset that is part of the subject matter of this action, as well as any profits generated from the use of any such asset, pursuant to equitable principles and doctrines of equity, including but not limited to the doctrine of unclean hands;

6.     That Defendants be enjoined from making any sales, transfers, conveyances, gifts, or encumbrances of any kind with regard to any of the assets that are the subject of this action or assets in which any of the Judgment Debtors have any interest pending the resolution of this action and the full satisfaction of Plaintiff's Judgment in the 2009 Federal RICO case;

7.     That each and every wrongful and/or fraudulent transaction and conveyance that is the subject of this action be set aside pursuant to T.C.A. §§ 66-3-301, *et seq.*, be declared null and void, and/or be equitably reformed such that the assets that are the subject of said

93

transactions and conveyances be attached and given over to the custody and care of the Receiver for such purposes as the Court directs;

8.     That any assets or funds of the Defendants or their agents which are found to have been used to facilitate any such wrongful and/or fraudulent transaction or conveyance, including but not limited to the funds used by the Defendants referenced above for the purchase of the SunTrust notes and the First Bank notes referenced herein, and any profits generated from the use of any such assets or funds, including but not limited to the sale of property and operations at Rarity Bay and the sale of property at Rarity Enclave, be deemed to be forfeited, paid over to the Receiver, and/or awarded to Plaintiff in accordance with equitable principles and doctrines of equity, including but not limited to the doctrine of unclean hands;

9.     That Plaintiff recover from the Defendants, jointly and severally, full restitution for his compensatory and special damages, which are approximately equivalent to the amounts awarded to Plaintiff in the 2009 Federal RICO case, as well as the costs of investigating and prosecuting this subsequent, ancillary action;

10.     That Defendants be assessed with punitive damages in the amount the trier of fact deems appropriate and just, not to exceed twice the amount of Plaintiff's compensatory damages generally referenced above;

11.     That Plaintiff recover all of his attorneys' fees and costs allowable by statute or common law, including but not limited to 18 U.S.C. § 1964(c), as well as pre-judgment interest in the maximum amount allowed by law and all discretionary costs allowable pursuant to Fed. R. Civ. P. 54; and

94

12.    That a jury be empaneled to hear this cause and that Plaintiff be granted such other relief as this Honorable Court deems appropriate and just.

Respectfully submitted this 19th day of October, 2012.

**ROBERT T. STOOKSBURY, JR.**

By: _____
WAYNE A. RITCHIE II, BPR #013936
RACHEL M. STEVENS, BPR #029546
**RITCHIE, DILLARD, DAVIES**
**& JOHNSON, P.C.**
606 West Main Avenue
Post Office Box 1126
Knoxville, Tennessee 37901-1126
(865) 637-0661
e-mail: war@rddjlaw.com

JAMES R. MOORE, BPR# 005894
MOORE & BROOKS
6207 Highland Place Way, Ste 203
Knoxville, TN 37919
(865) 285-7191

**Attorneys for Plaintiff Robert T. Stooksbury, Jr.**

95